RENTWAYS, INC., Appellant, *v.* O'NEILL MILK & CREAM Co., INC., Respondent.

Argued January 13, 1955; decided April 14, 1955.

*Vernon Murphy* for appellant. I. It was not within the province of the Appellate Division to apply different rules to this plaintiff or to create a new theory of defense in the first

instance. (*Judd* v. *O'Brien,* 21 N. Y. 186; *Matter of Kallus* [*Ideal Novelty & Toy Co.*], 292 N. Y. 459; *Atterbury* v. *Bank of Washington Heights,* 241 N. Y. 231.) II. Defendant's liability is based upon an executed agreement under the terms of which defendant leased six trucks for a period of three years which commenced on October 22, 1946. (*Gillet* v. *Bank of America,* 160 N. Y. 549; *Edrington-Minot Corp.* v. *Garsson, Inc.,* 219 App. Div. 65; *Simon* v. *Etgen,* 213 N. Y. 589; *Chipman* v. *Montgomery,* 63 N. Y. 221; *Wanamaker, N. Y. Inc.,* v. *Otis Elevator Co.,* 186 App. Div. 655; *Tunick* v. *Federal Food Stores,* 117 Misc. 329; *Dent* v. *North Amer. S.S. Co.,* 49 N. Y. 390.) III. There is no evidence in the record to enable the Appellate Division to make new findings modifying plaintiff's verdict by subtracting (a) the unpaid rent for four small trucks from June 1 to October 22, 1949; and (b) the maintenance expenses for the two large trucks for the same period. (*Costigan* v. *Mohawk & Hudson R. R. Co.,* 2 Denio 609; *Milage* v. *Woodward,* 186 N. Y. 252; *Ware Bros. Co.* v. *Cortland Cart & Carriage Co.,* 192 N. Y. 439; *Ducasse* v. *American Yellow Taxi Operators,* 224 App. Div. 516; *Mount Pleasant Stable* v. *Steinberg,* 238 Mass. 567.)

*David Krause* and *Theodore J. Groh* for respondent. I. The contract here involved should be strictly construed against plaintiff. (*Mutual Ins. Co.* v. *Hurni Co.,* 263 U. S. 167; *Atterbury* v. *Bank of Washington Heights,* 241 N. Y. 231; *Gillet* v. *Bank of America,* 160 N. Y. 549; *McKenna* v. *Metropolitan Life Ins. Co.,* 220 App. Div. 53.) II. The contract was divisible. Its performance was in fact divided by the way the delivery and receipt of the trucks were separate as between the small and large trucks. (*Mitchell, Inc.,* v. *Dannemann Hosiery Mills,* 258 N. Y. 22; *Price* v. *Spielman Motor Sales Co.,* 261 App. Div. 626; *Chiapparelli* v. *Baker, Kellogg & Co.,* 252 N. Y. 192; *Portfolio* v. *Rubin,* 233 N. Y. 439; *Ming* v. *Corbin,* 142 N. Y. 334; *De Graff & Palmer* v. *Mayper,* 65 Misc. 185; *Seymour* v. *Warren,* 179 N. Y. 1; *Nicoll* v. *Sands,* 131 N. Y. 19; *Woolsey* v. *Funke,* 121 N. Y. 87; *Kirke La Shelle Co.* v. *Armstrong Co.,* 263 N. Y. 79.) III. The deductions ordered by the Appellate Division from the prima facie amount of damages for the breach as to the two

large trucks are supported by evidence in the record and by authority. (*Ware Bros. Co.* v. *Cortland Cart & Carriage Co.*, 192 N. Y. 439; *Dunn* v. *Allen*, 59 App. Div. 561; *Preager* v. *Unity Shoemakers Corp.*, 257 App. Div. 632; *Kahn* v. *Antevil*, 248 App. Div. 889; *Milbank* v. *Jones*, 141 N. Y. 340; *Hayes* v. *Wightman*, 237 App. Div. 158, 261 N. Y. 708; *Matter of Kellett Aircraft Corp.*, 191 F. 2d 231.)

FULD, J.   The major question in this case concerns the commencement and termination dates of a written lease for the hire of six milk trucks.   The S & E Motor Hire Corporation, plaintiff's assignor (hereinafter referred to as plaintiff), entered into an agreement with defendant O'Neill Milk & Cream Co., Inc., on January 14, 1946, to lease to defendant six new Brockway trucks, two of six-ton capacity and four smaller vehicles.   They were to be built, painted and lettered according to defendant's specifications; the lessor was to pay all the expenses of their servicing and operation; and the lessee was to pay a weekly rental of $63 for each of the larger trucks and $53 for each of the smaller ones.

The agreement, embodied in a printed contract form prepared by plaintiff, provided in paragraph I that

" The Lessor hereby leases and the Lessee hereby hires from the Lessor six motor vehicle(s) as described below, or vehicle(s) of other manufacture substantially similar, for a period of three (3) years to commence on the date the contracted truck(s) is (are) put into the service of the Lessee."

Although, as the undisputed evidence showed, the parties intended that all six trucks were to be delivered within ninety days from the date the contract was signed, plaintiff did not furnish any trucks until some four and a half months later, when, on June 1, 1946, only the four smaller trucks were turned over. Defendant was billed for, and paid, the stipulated weekly rental for these four trucks as of and from June 1.   Plaintiff supplied two additional trucks in the first week of September, 1946, one small and one large, but these were older and not the two large Brockways called for by the contract.   These older trucks were used and paid for by defendant until October 22, when plaintiff finally delivered the large new ones.

Defendant continued to operate the six trucks until May 31, 1949 — three years from the date upon which it received delivery of the first four trucks — and then returned them, treating that date as the end of the three-year lease period for all six vehicles. Plaintiff, however, took the view that the contract did not terminate until October 22, 1949 — three years from the date that the last of the six trucks was delivered — and continued to bill defendant until that date. Upon defendant's refusal to pay, plaintiff brought this action to recover the rent allegedly due for the six trucks for the period from June 1 to October 22, 1949.

The trial court, expressly observing that " this is not a divisible contract ", adopted plaintiff's view that the three-year period specified in the contract was to be figured from October 22, 1946. Plaintiff was awarded the sum of $4,286.10, representing the rental for the six trucks from June 1 to October 22, 1949, less the amount plaintiff received from renting the trucks to others during that period.

The Appellate Division modified, concluding that the agreement was " divisible " and that the rental term of the four small trucks commenced on June 1, 1946, and that of the two large trucks on October 22. The lease was, accordingly, held to have terminated as to the small vehicles on June 1, 1949, and defendant's cancellation on that date was deemed to constitute a breach only as to the large trucks. The measure of plaintiff's damages was fixed at the amount of the agreed rental of the two large trucks from June 1 to October 22, less deductions (1) for the rentals received by plaintiff from others during that period and (2) for the expenses of servicing and operation that plaintiff would have incurred had defendant not defaulted.[1] Plaintiff has appealed to this court from the resulting judgment of modification.

1. The Appellate Division gave the parties the choice between stipulating the amounts of such deductions or submitting to a limited new trial. The parties thereupon entered into a stipulation fixing those amounts, on the basis of which the Appellate Division directed the entry of final judgment. Although it recited that it was not to be construed to limit either party's right to appeal to this court, the stipulation is necessarily conclusive as to the amounts agreed upon by the parties in lieu of submitting to a new trial. (See *Pines* v. *Beck*, 300 N. Y. 181, 186–187; *Hine* v. *New York Elevated R. R. Co.*, 149 N. Y. 154, 160–161.)

The element of uncertainty which has engendered this litigation was caused solely by plaintiff's failure to deliver all of the six trucks within the ninety-day period contemplated by the parties. The construction urged by plaintiff would thus enable it to profit by its own breach, by arbitrarily extending the term of the contract through the device of delaying the delivery of one or more of the trucks. According to plaintiff, its failure to deliver the two large new trucks prior to October 22, 1946, effected an extension of the lease term from three to three and a half years. It might, by further delay of delivery, just as well have been enlarged to four or five years, or even longer.

The contract, however, plainly manifests the design of the parties that the rental term is to be one of three years, and not one of indefinite duration depending upon the timeliness of plaintiff's performance.[2] A cardinal principle governing the construction of contracts is that the entire contract must be considered and, as between possible interpretations of an ambiguous term, that will be chosen which best accords with the sense of the remainder of the contract. (See, e.g., *Fleischman* v. *Furgueson,* 223 N. Y. 235, 239; *First Nat. Bank* v. *Jones,* 219 N. Y. 312, 315; 1 Restatement, Contracts, § 235, subd. [c].) '' That interpretation is favored which will make every part of a contract effective.'' (*Fleischman* v. *Furgueson, supra,* 223 N. Y. 235, 239.) The agreement in the present case may, perhaps, be ambiguous as respects its commencement date, but, as to the crucial provision that the duration of the rental term be three years, it is clear and unequivocal. Its '' every part '' may here be made '' effective '' only by construing the lease term as commencing separately for each truck or group of trucks on the date of its delivery. If plaintiff's reading of the agreement, that the lease term began and ended for all of the trucks on October 22, were to be adopted, the three-year duration provision would, in effect, be read out of the contract; and, indeed, the leasing of the four small trucks to defendant during the period prior

---

2. It may be that, when complete delivery was not made within the period specified, or a reasonable time thereafter, defendant could have cancelled the lease and that, by accepting the trucks at a later date, it waived its right to timely delivery. However, when it did accept delivery, defendant did not thereby waive the basic provision that the lease term was to be for a period of three years.

thereto would, most strangely, have to be regarded as not having been made pursuant to the contract at all.

Further militating against plaintiff's interpretation is the equally well-settled maxim that, where there is ambiguity in the terms of a contract prepared by one of the parties, " it is consistent with both reason and justice that any fair doubt as to the meaning of its own words should be resolved against " such party. (*Mutual Ins. Co.* v. *Hurni Co.,* 263 U. S. 167, 174; see *Atterbury* v. *Bank of Washington Heights,* 241 N. Y. 231, 238; *Gillet* v. *Bank of America,* 160 N. Y. 549, 554–555.) Application of that principle is particularly appropriate in this case, where the contract was embodied in a printed form prepared specifically by plaintiff for its use and where plaintiff itself, by its own delay of delivery, introduced the element of uncertainty into an otherwise clear provision. It would be anomalous if a lessor could, by his own conduct, vary the scope and meaning of a provision of his own formulation to the disadvantage of the lessee.

Little is to be gained by attempting to resolve the issue of interpretation in this case by resort to any fixed rule of divisibility or entirety. (See 3 Corbin on Contracts, §§ 694, 695; see, also, 3 Williston on Contracts [rev. ed., 1936], § 861, pp. 2413–2415.) It is unnecessary for us to determine whether this lease contract would be treated as a divisible one in some other connection or for some other purpose. As bearing on the issue of interpretation here presented, however, it is significant that the contract fixed different rental rates for the four small trucks and for the two large ones, and that the parties themselves treated the contract as immediately effective, as respects the small trucks, upon their delivery over four months prior to the delivery of the large trucks. Plaintiff sent periodic invoices, which defendant paid, for the use of the small trucks, at the stipulated weekly rate, during the entire period that elapsed between the dates of delivery of the two groups of vehicles. This practical construction of the contract reflected the parties' intent that their respective obligations as to the four small vehicles be treated as separate and distinct from those affecting the large vehicles. (Cf. 3 Williston, *op. cit.,* p. 2419.)

We agree, therefore, with the conclusion reached by the Appellate Division that the lease term commenced separately for each

group of trucks on the date of its delivery to defendant, and that defendant's termination of the contract as of June 1, 1949, constituted a breach on its part only as regards the large vehicles.

It is urged, however, that, since plaintiff argued at the trial that the lease term commenced for all six trucks on October 22, and defendant, that it began on June 1, the Appellate Division had, and this court has, no alternative but to accept either the one construction or the other.[3] To say that appellate courts must decide between two constructions proffered by the parties, no matter how erroneous both may be, would be to render automatons of judges, forcing them merely to register their reactions to the arguments of counsel at the trial level. It is quite true that an appellate court should not, and will not, consider different theories or new questions, if proof might have been offered to refute or overcome them had they been presented at the trial. (See *Lindlots Realty Corp.* v. *County of Suffolk,* 278 N. Y. 45, 52; *Daley* v. *Brown,* 167 N. Y. 381, 388; *Osgood* v. *Toole,* 60 N. Y. 475, 479.) But, quite obviously, the present is not such a case. Here, the issue involved the meaning of the written contract between the parties. The writing was in the record; each party had full opportunity to adduce all pertinent evidence bearing on its construction; and there is no claim or suggestion that either party would or could have offered any further evidence. In that state of the record, the Appellate Division was not limited to a choice between the opposing constructions contended for, at the trial, but was privileged to give to the contract a " meaning conceivably  *  *  * different from that which either party justifiably attached to the words." (3 Williston, *op. cit.,* p. 1743; see *Persky* v. *Bank of America Nat. Assn.,* 261 N. Y. 212, 217–219; see, also, Cohen and Karger, Powers of the New York Court of Appeals [1952], pp. 625–628.)

The judgment should be affirmed, with costs.

---

3. Actually, the interpretation adopted by the Appellate Division was advanced by defendant in the trial court after announcement of that court's orally delivered decision, by way of exception thereto. The record discloses that, when the point was raised, the trial judge did not reject it as untimely, but rather expressed his view on the merits, in opposition, that the lease in suit was " not a divisible contract."

CONWAY, Ch. J., and DYE, J., dissent and vote to remit the case to the Appellate Division for the reasons stated by BREITEL, J., in the Appellate Division, and also for the reason that the case was tried at Trial Term by both sides upon the assumption that the contract was an entire and indivisible one. An appellate court should confine itself to the theory mutually agreed upon by the parties (*Daley* v. *Brown,* 167 N. Y. 381; 6 Carmody on New York Practice [2d ed.], § 336, p. 255). " Trials are held to enable parties to bring to the court for decision disputed questions of fact or law, and parties who fail to avail themselves of the opportunity offered them to present such questions of fact or law to a trial court cannot on appeal present them for decision in this court." (*Persky* v. *Bank of America Nat. Assn.,* 261 N. Y. 212, 218–219; see, also, *Martin* v. *Home Bank,* 160 N. Y. 190, 199; *Wright* v. *Wright,* 226 N. Y. 578.) The question of fact here — whether when the contract was executed the parties intended a divisible or an entire contract — was never presented as a disputed issue at the trial. It was, therefore, not properly open to review upon appeal in the Appellate Division.

The judgment of the Appellate Division should be reversed and the case remitted to that court in order that it may review the questions of fact as determined by the trial court, without costs to either party.

DESMOND, FROESSEL and VAN VOORHIS, JJ., concur with FULD, J.; CONWAY, Ch. J., and DYE, J., dissent in an opinion; BURKE, J., taking no part.

Judgment affirmed.