**GOODHEART CLOTHING COMPANY, INC., Plaintiff–Appellee,**

v.

**LAURA GOODMAN ENTERPRISES, INC., Laura Goodman and Benjamin Goodman, Defendants–Appellants.**

**No. 356 Docket 91–7615.**

United States Court of Appeals, Second Circuit.

Argued Oct. 8, 1991.

Decided May 7, 1992.

Andrew A. Wittenstein, New York City (Friedman, Wittenstein & Hochman, of counsel), for plaintiff-appellee.

Before: MINER and MAHONEY, Circuit Judges, and SIFTON,* District Judge.

MAHONEY, Circuit Judge:

Defendants-appellants Laura Goodman Enterprises, Inc. ("Enterprises"), Laura Goodman, and Benjamin Goodman (collectively "the Goodmans") appeal from a judgment of the United States District Court for the Southern District of New York, Mary Johnson Lowe, *Judge*, entered May 31, 1991 that awarded attorney fees and costs in the amount of $90,361.31 to plaintiff Goodheart Clothing Co., Inc. ("Goodheart").

We reverse and remand.

### Background

Laura Goodman and James M. Blehart founded Goodheart in February 1981 as a manufacturer and seller of women's accessories, each acquiring fifty percent of Goodheart's common stock. In January 1984, Laura Goodman sold her Goodheart stock to Blehart and entered into an agreement not to compete with Goodheart for one year. She and her husband Benjamin Goodman, a Goodheart employee, then left Goodheart and formed a women's accessories business under the name B.G. Accessories, Inc. that apparently violated the noncompete agreement, because Goodheart secured a permanent injunction against Laura Goodman on that basis in New York state court.

In May 1987, Goodheart came to believe that Laura and Benjamin Goodman, by then apparently conducting business through Enterprises, were infringing a Goodheart registered trademark in a certain design appearing on Goodman products. Specifically, the Goodmans were placing a logo on their business goods and products that closely resembled Goodheart's trademark, which consisted of a

Barry G. Magidoff, New York City (Paul J. Sutton, Sutton, Magidoff & Amaral, of counsel), for defendants-appellants.

---

* The Hon. Charles P. Sifton, United States District Judge for the Eastern District of New York, sitting by designation.

woman's face in the shape of a heart with a single eye, a nose, and lips.

On May 29, 1987, Goodheart commenced this action by filing a complaint that alleged violations of several federal and state statutes (i.e., the Lanham Act, 15 U.S.C. §§ 1114(1) (1988) (trademark infringement) and 1125(a) (1988) (false designation of origin), and N.Y.Gen.Bus.Law §§ 349 (McKinney 1988) (deceptive business practices), 368–b (McKinney 1984) (trademark infringement), and 368–d (McKinney 1984) (injury to business reputation)), as well as common law unfair competition. Goodheart sought injunctive relief, an accounting, monetary damages, punitive damages, and costs, including attorney fees.

After granting Goodheart's motion for a temporary restraining order, the district court held a hearing on Goodheart's application for a preliminary injunction on June 26, 1987. Laura Goodman, Benjamin Goodman, and Blehart testified at the hearing, as did Gary Geschwind, a pillow manufacturer and witness for the Goodmans. In addition, the district court received numerous exhibits in evidence, including the allegedly offending business cards, tags, and scarves.

In a memorandum opinion and order entered August 10, 1988 (the "Order"), the district court granted Goodheart's motion for a preliminary injunction. The district court's detailed findings explicitly considered whether the Goodmans acted in "good faith," stating:

> [T]he actions of the defendants in developing and using this configuration on its line of ladies' accessories and pillows supports [sic] a finding of bad faith. As a former 50% shareholder in Goodheart, Laura Goodman was intimately familiar with the distinctive one-eyed heart used as the Goodheart trademark. In fact, at the hearing, she herself identified the salient features of the mark as well as the uses to which it is put by plaintiff. Within three weeks of her departure from Goodheart, she began selling ladies' accessories in direct violation of the covenant not to compete she entered into with Goodheart. All of her customers save one were conceded to be customers of Goodheart. This activity was stopped only upon the entry of a permanent injunction by the New York State Supreme Court. Soon thereafter, the Goodman's [sic] designed business cards and sample tags containing a configuration similar to Plaintiff's trademark in all significant respects. While Laura Goodman considered using a two-eyed heart design for the business cards, she specifically rejected that idea and opted for the one-eyed design.

> In addition, in 1985 and 1986, defendants produced the women's scarves employing Goodheart's trademark as a design. And at about the same time, they also produced the pillows containing the identical design. Finally, it is noteworthy that, approximately two weeks after this suit was filed, defendants destroyed the [Enterprises] business cards and sample tags. Benjamin Goodman contended that the cards were destroyed not to avoid liability but rather because he "didn't like the way they were printed." Hearing Transcript ("HT") at 46. In light of the Goodmans' familiarity with the trademark, however, as well as the onset of the litigation, this explanation seems implausible. Indeed, Benjamin Goodman admitted at the hearing that he "wanted to avoid this case." HT at 47. In sum, these facts lead us to the conclusion that the defendants did not happen upon their mark serendipitously or by happenstance. Rather, they intentionally imitated Goodheart's mark so as to capitalize on the latter's reputation.

The Order concluded as follows:

> Goodheart has undeniably established a likelihood of confusion under *Polaroid [Corp. v. Polaroid Electronics Corp.,* 287 F.2d 492 (2d Cir.), *cert. denied,* 368 U.S. 820, 82 S.Ct. 36, 7 L.Ed.2d 25 (1961)]. It has thereby demonstrated its likelihood of success on the merits of its trademark infringement claim, as well as the risk of irreparable harm if defendants' activities are allowed to continue unchecked. *American Cyanamid Company v. Campagna Per le Farmacie in Italia S.p.A. and Cosprophar, Inc.,* 847

F.2d 53 (2d Cir.1988). Accordingly, Goodheart's motion for a preliminary injunction is granted. Because at present no further activity is contemplated by the parties, this action shall be placed in suspense pending a request by either party that it be restored to active status.

It Is So Ordered.

Shortly thereafter, the Goodmans tendered an offer of judgment to Goodheart pursuant to Fed.R.Civ.P. 68. The offer read:

Pursuant to Rule 68, Fed.R.Civ.P., defendants by their undersigned counsel hereby offer to allow judgment to be taken against them in the amount of One Thousand Dollars ($1,000.00) exclusive of costs and attorneys fees, if any, awarded by the Court and to provide for a permanent injunction in accordance with the Court's Memorandum Opinion and Order, filed on the 10th day of August, 1988.

Goodheart accepted in a notice essentially repeating the language of the offer.

On November 4, 1988, the district court entered a judgment memorializing the terms of the agreement. The judgment read:

This action having been commenced by ... [Goodheart] on May 29, 1987 against defendants ..., and the defendants having appeared, and plaintiff's application for a temporary restraining order having been granted on June 11, 1987, and this action having come on for a preliminary hearing on June 26, 1987, and plaintiff's application for a preliminary injunction having been granted pursuant to [the Order], and defendants having offered in writing, pursuant to Rule 68 of the Federal Rules of Civil Procedure, to allow Goodheart to take judgment against them for one thousand dollars ($1,000.00) exclusive of costs and attorneys' fees, if any, which the Court may award and for a permanent injunction in accordance with the Court's Memorandum Opinion and Order filed on August 10, 1988, and plaintiff, within ten days thereafter, having duly accepted the offer in writing,

It is Ordered and Adjudged that:

1. plaintiff ... take judgment against defendants ... for one thousand dollars ($1,000.00) exclusive of costs and attorneys' fees, if any, which the Court may award; and

2. defendants ... are permanently enjoined, in accordance with [the Order], from infringing Goodheart's registered trademark (U.S. Trademark Registration No. 1,303,627 and New York Trademark Registration No. R21353) in violation of Section 32(1) and 43(a) of the Lanham Act, 15 U.S.C. §§ 1114(1) and 1125(a) (1982), New York General Business Law §§ 368–b, 368–d and 349, and New York Common Law.

Despite the settlement, the Goodmans took an appeal to this court, arguing that the final judgment imposed liability beyond that to which they had agreed. We affirmed the judgment in an unpublished order filed March 29, 1989, 875 F.2d 307.

On November 15, 1988, Goodheart filed a motion seeking an award of costs and attorney fees as the "prevailing party" in a trademark action pursuant to 15 U.S.C. § 1117 (1988). The district court referred the application to Magistrate Judge Sharon E. Grubin. The magistrate judge then rendered a report and recommendation in which she cited relevant cases in which attorney fees had been awarded for bad faith, intentional, or deliberate trademark violations; considered the issue of bad faith settled by the Order; and recommended awarding Goodheart $85,380.00 in attorney fees and $4,981.31 in costs, or a total award of $90,361.31.

The district court affirmed the magistrate judge's report and recommendation in an opinion and order entered May 9, 1991. In doing so, the court explicitly rejected the argument that the Goodmans preserved the issue of bad faith, finding that their offer of judgment "in accordance with" the Order incorporated the district court's bad faith determination therein. The district court accordingly ruled that the magistrate judge's report and recommendation was "affirmed on the issue of the conclusive

effect of the bad faith finding in the [Order]."

This appeal followed.

### Discussion

The Goodmans present two arguments on appeal:

(1) The offer of judgment did not incorporate the conclusion in the Order that the Goodmans had acted in bad faith; and

(2) the conclusion in the Order that the Goodmans acted in bad faith is not res judicata for purposes of awarding attorney fees.

■ To place this appeal in context, we briefly outline the statutory scheme for attorney fees in trademark actions. 15 U.S.C. § 1117(a) (1988) includes a provision that: "The court in exceptional cases may award reasonable attorney fees to the prevailing party." Whether to award attorney fees, and the amount of any award, are matters that fall within the discretion of the district court. *See Getty Petroleum Corp. v. Bartco Petroleum Corp.*, 858 F.2d 103, 114 (2d Cir.1988), *cert. denied*, 490 U.S. 1006, 109 S.Ct. 1642, 104 L.Ed.2d 158 (1989); *Warner Bros. Inc. v. American Broadcasting Cos.*, 720 F.2d 231, 248 (2d Cir.1983). When bad faith infringement is shown, a district court is authorized to award attorney fees on the basis that an "exceptional case[ ]" has been established, *see Getty Petroleum*, 858 F.2d at 113–14; *Centaur Communications, Ltd. v. A/S/M Communications, Inc.*, 830 F.2d 1217, 1229 (2d Cir.1987); *Springs Mills, Inc. v. Ultracashmere House, Ltd.*, 724 F.2d 352, 356–57 (2d Cir.1983); *Quaker State Oil Ref. Corp. v. Kooltone, Inc.*, 649 F.2d 94, 95 (2d Cir.1981) (per curiam), and a district court that fails to consider awarding attorney fees when bad faith is established abuses its discretion. *See Springs Mills*, 724 F.2d at 357.

### A. *The Meaning of the Offer of Judgment.*

■ Offers of judgment pursuant to Fed.R.Civ.P. 68 are construed according to ordinary contract principles. *See Whitaker*

*v. Associated Credit Servs., Inc.*, 946 F.2d 1222, 1226 (6th Cir.1991); *Erdman v. Cochise County, Ariz.*, 926 F.2d 877, 880 (9th Cir.1991); *Radecki v. Amoco Oil Co.*, 858 F.2d 397, 400 (8th Cir.1988); *Johnson v. University College of the Univ. of Ala.*, 706 F.2d 1205, 1209 (11th Cir.), *cert. denied*, 464 U.S. 994, 104 S.Ct. 489, 78 L.Ed.2d 684 (1983); *Boorstein v. City of New York*, 107 F.R.D. 31, 33–34 (S.D.N.Y. 1985); *cf. SEC v. Levine*, 881 F.2d 1165, 1178–79 (2d Cir.1989) (consent judgment should be construed as contract) (collecting cases). Accordingly, several contract principles are relevant here.

"[I]f a writing, or the term in question, appears to be plain and unambiguous on its face, its meaning must be determined from the four corners of the instrument without resort to extrinsic evidence of any nature." John D. Calamari & Joseph M. Perillo, *Contracts* 166–67 (3d ed. 1987); *see also Hunt Ltd. v. Lifschultz Fast Freight, Inc.*, 889 F.2d 1274, 1277–78 (2d Cir.1989) (collecting cases). On the other hand, "[i]f the term in question does not have a plain meaning it follows that the term is ambiguous." Calamari & Perillo at 167. "Contract language is ambiguous if it is reasonably susceptible of more than one interpretation, and a court makes this determination by reference to the contract alone." *Burger King Corp. v. Horn & Hardart Co.*, 893 F.2d 525, 527 (2d Cir.1990) (citing *Curry Rd. Ltd. v. K mart Corp.*, 893 F.2d 509, 511 (2d Cir.1990); *Chimart Assocs. v. Paul*, 66 N.Y.2d 570, 572–73, 489 N.E.2d 231, 233, 498 N.Y.S.2d 344, 346 (1986); *Breed v. Insurance Co. of N. Am.*, 46 N.Y.2d 351, 355, 385 N.E.2d 1280, 1282, 413 N.Y.S.2d 352, 355 (1978)). Conversely, contractual language is unambiguous "if it has 'a definite and precise meaning, unattended by danger of misconception in the purport of the [contract] itself, and concerning which there is no reasonable basis for a difference of opinion.'" *Hunt*, 889 F.2d at 1277 (quoting *Breed*, 46 N.Y.2d at 355, 385 N.E.2d at 1282, 413 N.Y.S.2d at 355).

Further, "[a] court should interpret a contract in a way that ascribes meaning, if possible, to all of its terms." *United*

*States Naval Inst. v. Charter Communications, Inc.,* 875 F.2d 1044, 1049 (2d Cir. 1989) (citing *Spaulding v. Benenati,* 57 N.Y.2d 418, 425, 442 N.E.2d 1244, 1247, 456 N.Y.S.2d 733, 736 (1982); *Corhill Corp. v. S.D. Plants, Inc.,* 9 N.Y.2d 595, 599, 176 N.E.2d 37, 38, 217 N.Y.S.2d 1, 3 (1961); *Rentways, Inc. v. O'Neill Milk & Cream Co.,* 308 N.Y. 342, 347, 126 N.E.2d 271, 273 (1955); *Restatement (Second) of Contracts* § 203(a) (1981)). Finally, interpretation of a contract generally is a question of law, subject to *de novo* review. *See United States v. Liranzo,* 944 F.2d 73, 77 (2d Cir. 1991); *Werbungs Und Commerz Union Austalt v. Collectors' Guild, Ltd.,* 930 F.2d 1021, 1026 (2d Cir.1991); *Nicholas Lab. Ltd. v. Almay, Inc.,* 900 F.2d 19, 21 (2d Cir.1990) (per curiam); *Network Publishing Corp. v. Shapiro,* 895 F.2d 97, 99 (2d Cir.1990) (citing *Eddy v. Prudence Bonds Corp.,* 165 F.2d 157, 163 (2d Cir.1947), *cert. denied,* 333 U.S. 845, 68 S.Ct. 664, 92 L.Ed. 1128 (1948)). With these principles in mind, we turn to the contentions of the parties.

■ The Goodmans argue that language in their offer of judgment referring to the Order only invoked the Order to the extent that it defined the scope of the injunction, and not as a basis for assessing attorney fees. Specifically, they insist that the phrase "in accordance with the Court's Memorandum Opinion and Order" simply means that the permanent injunction is defined and bounded by the preliminary injunction granted in the Order. Further, they maintain that the question of attorney fees is expressly reserved by the language "attorneys fees, if any" included earlier in the offer of judgment.

To the contrary, Goodheart urges that the language of the offer of judgment incorporates the entire Order into the judgment, thus forming a proper basis for awarding attorney fees. Specifically, Goodman argues "that defendants' offer constituted an acceptance of the District Court's opinion as binding for all purposes in the litigation...."

We agree with the Goodmans. The offer of judgment clearly provides for a monetary judgment against the Goodmans "in the amount of [$1,000.00] exclusive of costs and attorneys fees, if any, awarded by the Court," and then makes separate provision for "a permanent injunction in accordance with the [Order]." The judgment entered as a result of the offer of judgment is similarly structured. We conclude that the words "if any" were expressly intended to reserve the attorney fee issue, while the reference to the Order should fairly be read to define the contours of the permanent injunction, which would simply continue as a permanent decree the preliminary injunction for which the Order provided.

This ruling obviously does not preclude a finding of bad faith and award of attorney fees pursuant to § 1117(a) upon remand. Indeed, upon the record as developed to date in this litigation, it would be an abuse of discretion for the district court to fail to consider an award of attorney fees. *See Springs Mills,* 724 F.2d at 357. We hold only that it was error to regard the Goodmans' offer of judgment as precluding them from subsequently contesting an award of attorney fees pursuant to § 1117.

### B. *Res Judicata.*

■ The district court ruled that the Order had preclusive, res judicata impact upon the good faith issue. This view was thoroughly interwoven, however, with the court's analysis of the contractual meaning of the Goodmans' offer of judgment. Indeed, Goodheart states in its appeal brief:

We are cognizant, of course, that Judge Lowe referred to the doctrine of *res judicata* in her analysis of the matter.... While we obviously believe that the result reached by Judge Lowe is correct, we do not believe that reliance upon the doctrine of *res judicata* is necessary to reach that result. We note in this respect that Judge Lowe's analysis of the matter is essentially contractual in nature.

The issue of the res judicata effect of a ruling on a preliminary injunction is not without its difficulties. In *Lummus Co. v. Commonwealth Oil Ref. Co.,* 297 F.2d 80, 89 (2d Cir.1961), *cert. denied,* 368 U.S. 986, 82 S.Ct. 601, 7 L.Ed.2d 524 (1962), we con-

sidered whether a judgment that was nonfinal under 28 U.S.C. § 1291 (1988) might nonetheless be considered final for purposes of preclusion,[1] and concluded that the issue "turns upon such factors as the nature of the decision (i.e., that it was not avowedly tentative), the adequacy of the hearing, and the opportunity for review." *Amalgamated Sugar Co. v. NL Indus., Inc.*, 825 F.2d 634, 642 (2d Cir.), *cert. denied*, 484 U.S. 992, 108 S.Ct. 511, 98 L.Ed.2d 511 (1987), was decided on other grounds, so we accordingly found "no need to consider the interesting argument based on Judge Friendly's decision in [*Lummus*] that the preliminary injunction [considered in *Amalgamated*] could form the basis for applying res judicata. On that issue we express no opinion."

Both *Lummus* and *Amalgamated* were concerned, furthermore, with the preclusive effect of a preliminary injunction ruling by one court when an issue addressed by that ruling was considered by a second court. Here, by contrast, the question posed is whether the same court that issued a preliminary injunction should revisit the issue of the Goodmans' good faith at a subsequent stage in the same litigation. Accordingly, to the extent that any form of preclusion might be considered applicable here, it would not be a rule of res judicata or collateral estoppel, but rather the somewhat more flexible law-of-the-case doctrine, under which courts "generally adhere to [their] own earlier decision on a given issue in the same litigation." *United States v. Adegbite*, 877 F.2d 174, 178 (2d Cir.), *cert. denied*, 493 U.S. 956, 110 S.Ct. 370, 107 L.Ed.2d 356 (1989).

In any event, no rule of preclusion may appropriately be applied in this case. A preliminary determination of likelihood of success on the merits in a ruling on a motion for preliminary injunction is ordinarily tentative, pending a trial or motion for summary judgment. *See A.J. Canfield Co. v. Vess Beverages, Inc.*, 859 F.2d 36, 38–39 (7th Cir.1988). As we stated in *Sierra Club v. United States Army Corps of Eng'rs*, 732 F.2d 253, 256 (2d Cir.1984): "A preliminary injunction is issued to maintain

the *status quo* until there can be a hearing on the merits." *See also Abdul Wali v. Coughlin*, 754 F.2d 1015, 1025 (2d Cir. 1985); *Arthur Guinness & Sons, PLC v. Sterling Publishing Co.*, 732 F.2d 1095, 1099 (2d Cir.1984); *Diversified Mortgage Investors v. U.S. Life Title Ins. Co.*, 544 F.2d 571, 576 (2d Cir.1976). It would therefore be anomalous at least in most cases, and here, to regard the initial ruling as foreclosing the subsequent, more thorough consideration of the merits that the preliminary injunction expressly envisions.

We do not regard the district court as having departed from these fairly fundamental axioms regarding the scope and effect of preliminary injunctions. Rather, the "preclusive" effect given to the Order was premised upon the district court's interpretation of the Goodmans' offer of judgment. We are convinced, on the contrary, that the Goodmans' offer did not bar them from contesting a subsequent § 1117 award of attorney fees, or any subsidiary determinations necessary to such an award, and accordingly reverse and remand for further proceedings on the issue of attorney fees.

On remand, of course, the district court need not disregard the evidence already received at the prior preliminary injunction hearing on the issue of bad faith. We conclude, however, that the Goodmans' offer of judgment did not foreclose them on this issue.

### Conclusion

The judgment of the district court is reversed and the case is remanded for further proceedings not inconsistent with this opinion.

MINER, Circuit Judge, dissenting:

I would affirm the judgment of the district court.

Pursuant to Fed.R.Civ.P. 68, the Goodmans offered to allow judgment to be taken against them for $1,000, exclusive of costs and exclusive of any attorney's fees that might be awarded by the court, and "for a permanent injunction in accordance

---

**1.** In *Lummus,* we accorded partial preclusive effect to a First Circuit ruling that reversed a

district court's grant of a preliminary injunction. *See* 297 F.2d at 83–84, 89–90 & n. 8.

with the Court's Memorandum Opinion and Order, filed on the 10th day of August, 1988." The offer, prepared by the Goodmans, was accepted by Goodheart, and a judgment was entered in the language of the offer. Indeed, the district court had no alternative but to enter the judgment exactly as offered and accepted, in view of the "self-executing" nature of Rule 68 judgments. *See Mallory v. Eyrich*, 922 F.2d 1273, 1279 (6th Cir.1991).

It seems to me that the intention of the parties in the contractual situation in which they found themselves was clear: first, permanently to enjoin the Goodmans from infringing Goodheart's trademark; second, to have the Goodmans make a token payment of $1,000 to Goodheart; and third, to have the Goodmans pay costs to Goodheart, along with attorney's fees in an amount to be determined, all conforming to, consistent with, and grounded on the reasons set forth in the opinion of the district court on the motion for preliminary injunction.

No elaborate explanation is necessary to tell us how the parties came to an agreement for the settlement of their trademark dispute. The path is apparent and began when the district court carefully considered the hearing testimony, examined the submissions of the parties on the preliminary injunction motion, and determined that "Goodheart has undeniably established a likelihood of confusion." In arriving at that determination, the district court observed that "facts lead us to the conclusion that the defendants did not happen upon their marks serendipitously or by happenstance. Rather, they intentionally imitated Goodheart's mark so as to capitalize on the latter's reputation." In short, the district court found the Goodmans guilty of the bad faith type of infringement that justifies the award of attorney's fees. *See Getty Petroleum Corp. v. Bartco Petroleum Corp.*, 858 F.2d 103, 114 (2d Cir.1988), *cert. denied*, 490 U.S. 1006, 109 S.Ct. 1642, 104 L.Ed.2d 158 (1989).

The district court's opinion clearly spelled "curtains" for the Goodmans. Faced with the prospect of additional litigation expense, exposure to substantial damages and potential liability for the ongoing attorney's fees incurred by Goodheart, the Goodmans folded their hand. Under the circumstances, it is inconceivable that the district court's findings after trial would have been any different from its findings after the preliminary injunction hearing: that the Goodmans "intentionally imitated" the distinctive one-eyed heart trademark and that they did so for the purpose of capitalizing on the Goodheart reputation. The parties certainly did not believe that there would be a different outcome after trial. Otherwise, there would have been no offer of judgment and no acceptance, and the case would have gone to trial.

The reversal of the district court judgment subject of this appeal and the remand of this case for further proceedings will produce no different result. The bad faith of the Goodmans has been established to the satisfaction of the district court, and that finding will not change. The judgment entered upon the offer made under Rule 68 requires recognition of that finding in connection with the assessment of attorney's fees, since the judgment provides, in specific terms of reference, that the permanent injunction granted therein is based upon the same findings as the preliminary injunction.

My colleagues say that the "in accordance with" language "should fairly be read to define the contours of the permanent injunction, which would simply continue as a permanent decree the preliminary injunction for which the Order provided." At 273. I cannot agree. The "contours" of the permanent injunction are defined with detailed specificity, going so far as to identify the U.S. trademark registration number, the New York trademark registration number, and the sections of the Lanham Act and the New York General Business Law that were violated. It seems clear to me that there would be no need to include the phrase "in accordance with" if the intention of the parties was merely to define what was to be permanently enjoined.

While the offer and judgment refer to "attorneys fees, *if any*, awarded by the Court," I do not believe that the emphasized words are meant to denote anything other than a recognition of the court's discretionary authority to award fees, even

where bad faith clearly is established. A district court abuses its discretion only if it fails to consider an award of attorney's fees when bad faith, or, more properly, an "exceptional case" is identified. *See Springs Mills, Inc. v. Ultracashmere House, Ltd.*, 724 F.2d 352, 357 (2d Cir. 1983). The district court here accepted the comprehensive and well-reasoned report and recommendation of the Magistrate Judge and made an appropriate attorney's fee award. The award was proper in all respects. *See* 15 U.S.C. § 1117(a).

Because my colleagues fail to fully recognize and effectuate the agreement of the parties in accordance with the unambiguous offer of judgment and acceptance in this case, *see Whitaker v. Associated Credit Services, Inc.*, 946 F.2d 1222, 1226 (6th Cir.1991), and because that failure results in the improper rejection of the district court's finding of bad faith infringement, and because that rejection leads to the inevitable (and, in my opinion, incorrect) conclusion that attorney's fees were improperly allowed by the district court, I am constrained to register a respectful dissent.