Xiomara **COLONDRES**, individually and on behalf of Justin Colondres and Gabriel Colondres, infants, Plaintiffs,

v.

Nicholas **SCOPPETTA**, individually and as Commissioner; Dorothy Baker, individually and as supervisor; Anna Marmolejos, individually and as caseworker; Jacqueline Berridge, individually and as manager; Rochelle Wright, individually and as supervisor; Wanda Castillo, individually and as caseworker; Sean Virgo, individually and as caseworker; Bernard Johnson, individually and as caseworker, and the City of New York, Defendants.

No. 01–CV–7924(JBW).

United States District Court, E.D. New York.

Nov. 18, 2003.

---

Lansner & Kubitschek, by Carolyn A. Kubitschek, Esq., David J. Lansner, Esq., New York, NY, for Plaintiff Xiomara Colondres.

Michael A. Cardozo, Corporation Counsel of the City of New York, by Eamonn F. Foley, Esq., New York, NY, for Defendants Nicholas Scoppetta et al.

## MEMORANDUM, ORDER AND JUDGMENT

WEINSTEIN, Senior District Court Judge.

### I. Introduction

Plaintiff is a member of Subclass A in *Nicholson v. Williams*, 203 F.Supp.2d 153 (E.D.N.Y.2002). Her case was cited in *Nicholson. Id.* at 192. A preliminary injunction was granted to ensure that: "1) battered mothers who are fit to retain custody of their children do not face prosecution or removal of their children solely because the mothers are battered, and 2) the child's right to live with such a mother

is protected." *Id.* at 257. An appeal is currently before the Court of Appeals for the Second Circuit which has certified questions of state law to the New York Court of Appeals. *See Nicholson v. Scoppetta*, 344 F.3d 154, 176–77 (2d Cir.2003).

This independent action against officials and employees of the Administration for Children's Services ("ACS") and the City of New York ("the City") asserts constitutional violations arising out of 1) wrongful removal of plaintiff's children from her custody; and 2) filing and prosecuting child protective proceedings in the New York Family Court against her maliciously and without probable cause. *See* 42 U.S.C. § 1983. She and her children have obtained a judgment of $90,001.00, pursuant to an accepted offer under Federal Rule of Civil Procedure 68.

The City has now asserted a lien on plaintiff's recovery as payment for public assistance which she received subsequent to her involvement with ACS. It does so pursuant to section 104–b of the New York Social Services Law ("Lien Law"). The Lien Law authorizes public welfare officials to assert liens for public assistance on recoveries for claims and suits for personal injuries obtained by welfare recipients.

Alleging that the lien violates the United States Constitution as well as Rule 68, plaintiff asks the court to enforce the full amount of the judgment. For the reasons stated below, the motion is denied.

### II. Facts

In November 2001 plaintiff brought an individual suit against officials and employees of ACS and the City of New York alleging constitutional violations arising out of the wrongful removal of her children and the prosecution of her for neglect in the New York Family Court maliciously and without probable cause. *See* Com-

plaint, *Colondres v. Scoppetta* (E.D.N.Y. Nov. 30, 2001) (No. 01–7924).

In February 2002, while the case was pending, plaintiff received a Notice of Lien from the Human Resources Administration ("HRA"), the department responsible for administering welfare and other social service programs in New York City. It asserted a lien on any recovery plaintiff might receive in her suit against defendants in the preliminary sum of $2,500 for the amount of public assistance furnished to plaintiff from July 26, 2001 to January 28, 2002—the period after which her children had been returned to her by ACS. The notice stated that the amount of the lien would not be limited to the amount the City claimed; rather, upon the final disposition of plaintiff's suit, an amended notice of lien would be served establishing the amount of the lien for the total amount of public assistance furnished subsequent to July 26, 2001.

On March 7, 2003, defendants served plaintiff with a offer of judgment in her individual suit pursuant to Federal Rule of Civil Procedure 68. The amount offered was $90,001.00 plus costs and reasonable attorneys fees accrued to date. The offer stated that it was not to be "construed as an admission either that any of the defendants are liable in this action, or that plaintiffs have suffered any damage."

On March 12, 2003, HRA mailed an amended Notice of Lien to plaintiff and her attorneys in which it asserted a lien in the sum of $2,630 for the amount of public assistance furnished to plaintiff through March 7, 2003. As with the earlier Notice of Lien, it stated that the lien amount was not limited to the stated amount. The total amount of the lien asserted against plaintiff's portion of the Rule 68 judgment has since increased to $4,222.26.

On March 19, 2003, plaintiff accepted the Rule 68 offer of judgment. In April 2003,

the magistrate judge entered an Order of Compromise in the case. It apportioned $30,000 each to plaintiff's two infant children, Justin and Gabriel, to be held in interest-bearing accounts and awarded the rest of the judgment ($30,001.00) to plaintiff personally. In the Order of Compromise, the Court explicitly stated that it retained jurisdiction to enforce the order as well as the terms of the underlying Rule 68 judgment.

On June 24, 2003, a judgment in favor of plaintiff in the sum of $90,001.00 plus costs and reasonable attorneys' fees was entered by the clerk of the court.

Plaintiff moves to enforce the Rule 68 judgment. She seeks 1) a declaration that the judgment is free and clear of any liens for public assistance or medicaid benefits; and 2) an order that defendants should not reduce the amount they pay on the judgment. She argues that New York's Lien Law: (1) is pre-empted by section 1983 when the losing municipal defendant attempts to reduce recovery by setting off amounts it claims it is owed; (2) violates the First Amendment by chilling plaintiff's right of access to the courts; (3) violates the Due Process Clause of the Fourteenth Amendment by failing to provide for a pre-deprivation hearing; and (4) is contrary to Rule 68.

### III. Law

A. Section 104–b of New York Social Services Law

New York's Lien Law establishes the authority of public welfare officials to assert liens for public assistance on claims and suits for personal injuries brought by welfare recipients:

> If a recipient of public assistance and care shall have a right of action, suit, claim, counterclaim or demand against another on account of any personal injuries suffered by such recipient, then the

public welfare official for the public welfare district providing such assistance and care shall have a lien for such amount as may be fixed by the public welfare official not exceeding, however, the total amount of such assistance and care furnished by such public welfare official on and after the date when such injuries were incurred.

N.Y. Soc. Serv. L. § 104–b(1). An action for "personal injuries" includes malicious prosecution. *See* N.Y. Gen. Constr. L. § 37–a.

Notices and amended notices of lien must be mailed to the welfare recipient and the party alleged to be liable for the recipient's injuries. N.Y. Soc. Serv. L. §§ 104–b(2), (4). The notice must contain "the name and address of the injured recipient, the date and place of the accident, and the name of the person, firm or corporation alleged to be liable to the injured party for such injuries, together with a brief statement of the nature of the lien, the amount claimed and that a lien is claimed upon said right of action, suit, claim, counterclaim or demand by the public welfare official. . . ." N.Y. Soc. Serv. L. § 104–b(2). The lien is "deemed to be effective, notwithstanding any inaccuracy or omission," if it identifies "the injured recipient and the occurrence upon which his claim for damages is based." *Id.*

If a party wishes to challenge the assertion of a lien for public assistance or the amount of such lien, he or she may do so in an Article 78 proceeding. *See* N.Y. C.P.L.R. art. 78; *Hellenic American Neighborhood Action Comm. v. City of New York*, 101 F.3d 877, 881 (2d Cir.1996) (petitioners in Article 78 proceedings may submit affidavits and other written proof of their claims and may obtain a trial if triable issue of fact is raised).

The constitutionality of New York's Lien Law has been upheld. *See Snell v. Wyman*, 281 F.Supp. 853 (S.D.N.Y.1968) (holding that sections of the Lien Law, including those providing for liens on recovery for personal injuries, were not invalid on substantive due process, equal protection, or Supremacy Clause grounds).

## B. Jurisdiction

 Courts have the "inherent power to do all things that are reasonably necessary for the administration of justice within the scope of their jurisdiction." *United States v. Field*, 193 F.2d 92, 96 (2d Cir. 1951); *see also Haitian Ctrs. Council v. Sale*, 817 F.Supp. 336, 337 (E.D.N.Y.1993) ("A district court may exercise its inherent power to protect the parties appearing before it, to preserve the integrity of an action, to maintain its ability to render a final judgment and to ensure the administration of justice."). They have the duty to enforce settlement agreements they have approved. *Meetings & Expositions, Inc. v. Tandy Corp.*, 490 F.2d 714, 717 (2d Cir.1974). Where the court explicitly retains jurisdiction over a settlement, there is ancillary jurisdiction. *See Kokkonen v. Guardian Life Ins. Co. of America*, 511 U.S. 375, 381, 114 S.Ct. 1673, 128 L.Ed.2d 391 (1994).

## C. Pre-emption

"Pre-emption doctrine stems from the Supremacy Clause of the United States Constitution and invalidates any state law that contradicts or interferes with an Act of Congress." *Hayfield N. R.R. Co., Inc. v. Chicago and N.W. Transp. Co.*, 467 U.S. 622, 627, 104 S.Ct. 2610, 81 L.Ed.2d 527 (1984). Pre-emption may result in any of three ways:

First, Congress may in express terms declare its intention to preclude state regulation in a given area. Second, pre-emption may be implied when federal law is sufficiently comprehensive to

make reasonable the inference that Congress left no room for supplementary state regulation. Third, state law may be preempted to the extent that it actually conflicts with a valid federal statute." *Bedford Affiliates v. Sills*, 156 F.3d 416, 426 (2d Cir.1998) (internal citations and quotations omitted). Conflict pre-emption occurs where "compliance with both state and federal regulations is a physical impossibility or where state law stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress." *Gade v. Nat'l Solid Wastes Mgmt. Ass'n,* 505 U.S. 88, 98, 112 S.Ct. 2374, 120 L.Ed.2d 73 (1992) (internal citations and quotations omitted).

"[C]ourts should not lightly infer pre-emption." *Int'l Paper Co. v. Ouellette*, 479 U.S. 481, 492, 107 S.Ct. 805, 93 L.Ed.2d 883 (1987). Nevertheless, in *Hankins v. Finnel* the Eighth Circuit held that section 1983 preempts the Missouri Incarceration Reimbursement Act to the extent that the Act permits the state to recoup, as reimbursement for an inmate's incarcertation expenses, the very monies it has paid to satisfy a section 1983 judgment against one of its employees. 964 F.2d 853, 861 (8th Cir.1992). Under the Missouri Incarceration Reimbursement Act, the state could seek reimbursement of up to 90% of a prisoner's assets including those received from a money judgment against the state. *Id.* at 854. Noting that purposes of section 1983 were to compensate victims and deter future violations of constitutional rights, the court observed, "[t]o allow the State to largely recoup this award would be inimical to the goals of [section 1983 since] ... neither the state nor its employees would have the incentive to comply with federal and constitutional rights of prisoners.'" *Id.* at 861 (internal quotation omitted).

The Eighth Circuit declined to extend the reasoning of *Hankins* to preclude the seizure of prisoners' section 1983 recoveries to pay victim restitution under Iowa's restitution statute. *See Beeks v. Hundley,* 34 F.3d 658 (8th Cir.1994). It concluded, "[V]ictim restitution does not defeat § 1983's deterrence goal." *Id.* at 661; *see also Brown v. Stone,* 66 F.Supp.2d 412, 416–17 (E.D.N.Y.1999) (holding that the New York State Office of Mental Health (OHM) was not preempted from seeking payment for its treatment and care costs from the proceeds of damage awards recovered by patients in section 1983 litigation against OHM or its employees). The *Brown* court noted, "[T]he logical conceptual reach of plaintiff's § 1983 preemption claim would immunize all civil rights recoveries in any § 1983 litigation by one indebted to the State since the issue of deterrence would always be implicated. There is simply no warrant for such an amorphous and arbitrary application of the preemption doctrine." *Id.* at 439 (citation omitted).

### D. First Amendment

"It is well established that all persons enjoy a constitutional right of access to the courts, although the source of this right has been variously located in the First Amendment right to petition for redress, the Privileges and Immunities Clause of Article IV, section 2, and the Due Process Clauses of the Fifth and Fourteenth Amendments." *Monsky v. Moraghan,* 127 F.3d 243, 246 (2d Cir.1997). To the extent that the right of access to the courts is bound up with the right to petition for redress of grievances under the First Amendment, it is "intimately connected both in origin and in purpose with the other First Amendment rights of free speech and free press." *Brown,* 66 F.Supp.2d at 433 (quoting *United Mine Workers of Am. v. Illinois Bar Ass'n,* 389

U.S. 217, 222, 88 S.Ct. 353, 19 L.Ed.2d 426 (1967)).

■ Retaliation for exercising rights protected by the First Amendment is prohibited. "A plaintiff asserting such a First Amendment claim must allege that (i) he has an interest protected by the First Amendment; (ii) the defendant's actions were motivated by or substantially caused by the plaintiff's exercise of that right; and (iii) the defendant's action effectively chilled the exercise of the plaintiff's First Amendment rights." *Connell v. Signoracci*, 153 F.3d 74, 79 (2d Cir.1998) (citations omitted).

■ The chilling effect cannot be remote or speculative. *See, e.g., Spear v. Town of West Hartford*, 954 F.2d 63, 67 (2d Cir.1992); *Hankard v. Town of Avon*, 126 F.3d 418, 424 (2d Cir.1997). Actual inhibition is required. *Curley v. Village of Suffern*, 268 F.3d 65, 73 (2d Cir.2001) (plaintiff must show her First Amendment rights were "actually chilled") (quoting *Davis v. Village Park II Realty Co.*, 578 F.2d 461, 464 (2d Cir.1978)). *De minimus* interference with access to the courts is not constitutionally significant. *See Ingraham v. Wright*, 430 U.S. 651, 674, 97 S.Ct. 1401, 51 L.Ed.2d 711 (1977) ("There is, of course, a *de minimus* level of imposition with which the Constitution is not concerned."); *see also Brown v. Stone*, 66 F.Supp.2d 412, 436 (E.D.N.Y.1999) ("[A]ny perceived chilling effect would appear to be *de minimus,* and hence not of constitutional significance."); *Arce v. Banks*, 913 F.Supp. 307, 309 (S.D.N.Y.1996) ("At most, [plaintiff] has suffered a *de minimus* infringement of his First Amendment rights which is not actionable in a § 1983 petition.").

Cases are fact-specific. In *Acevedo v. Surles*, for example, the court found that plaintiffs' First Amendment rights of access to the courts were deterred by the practice of the New York State Office of Mental Health ("OHM") serving verified claims for the full amount of hospitalization and treatment costs on those mental health patients who filed lawsuits against OHM. 778 F.Supp. 179, 185 (S.D.N.Y. 1991). It noted, "OHM's policy has an especially chilling effect because OHM does not tell the patient that it will collect charges only in the amount of any recovery against the State." *Id.* When OHM changed its policy to limit itself to imposing counterclaims in sums not to exceed plaintiffs' recovery, no First Amendment violation was found. *Siegel v. Surles*, No. 4053119/93, slip op. (N.Y.Sup.Ct., Mar. 20, 1995), *aff'd without opinion*, 239 A.D.2d 115, 657 N.Y.S.2d 549 (1st Dept.1997), *leave to appeal denied*, 91 N.Y.2d 804, 668 N.Y.S.2d 559, 691 N.E.2d 631 (1997); *see also Brown*, 66 F.Supp.2d at 436 (stating that, in a situation where charges were only assessed up to the full amount of a plaintiff's recovery, it "would not be inclined to find the requisite chill should the notice clearly and explicitly inform the plaintiff of the applicable law").

### E. Procedural Due Process

"The fundamental requirement of due process is an opportunity to be heard upon such notice and in such proceedings as are adequate to safeguard the right for which the constitutional protection is invoked." *Anderson Nat. Bank v. Luckett*, 321 U.S. 233, 246, 64 S.Ct. 599, 88 L.Ed. 692 (1944). It is a flexible concept which calls for such procedural protection as the particular situation demands. *Morrissey v. Brewer*, 408 U.S. 471, 481, 92 S.Ct. 2593, 33 L.Ed.2d 484 (1972).

■ A procedural due process claim is analyzed under a two-part test: whether the defendants deprived the plaintiff of a protected liberty or property interest, and

if so, what constitutional process was due. *Logan v. Zimmerman Brush Co.*, 455 U.S. 422, 428, 102 S.Ct. 1148, 71 L.Ed.2d 265 (1982). To determine what process is constitutionally due, a court will balance three factors: (1) the private interest that will be affected by the official action; (2) the risk of an erroneous deprivation of the interest through the procedures used and the probative value, if any, of additional or substitute procedural safeguards; and (3) the government's interest, including the burdens that additional or substitute procedural safeguards would entail. *Mathews v. Eldridge*, 424 U.S. 319, 335, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976).

■ "Applying this test, the Court usually has held that the Constitution requires some kind of a hearing *before* the State deprives a person of liberty or property." *Zinermon v. Burch*, 494 U.S. 113, 127, 110 S.Ct. 975, 108 L.Ed.2d 100 (1990) (emphasis in original). In circumstances involving random, unauthorized acts by state employees, however, the Court has found that due process is not violated if the state provides a meaningful postdeprivation remedy. *See, e.g., Hudson v. Palmer*, 468 U.S. 517, 533, 104 S.Ct. 3194, 82 L.Ed.2d 393 (1984); *Parratt v. Taylor*, 451 U.S. 527, 541, 101 S.Ct. 1908, 68 L.Ed.2d 420 (1981), *overruled on other grounds by Daniels v. Williams*, 474 U.S. 327, 106 S.Ct. 662, 88 L.Ed.2d 662 (1986). "When the deprivation occurs in the more structured environment of established state procedures, rather than random acts, the availability of postdeprivation procedures will not, ipso facto, satisfy due process." *Hellenic American Neighborhood Action Comm. v. City of New York*, 101 F.3d 877, 880 (2d Cir.1996). Thus, the constitutionality of Article 78 proceedings, as a postdeprivation remedy, is often contingent upon the nature of the deprivation—i.e., whether it was based on an unauthorized act by

a state employee or an established state procedure. *Compare Hellenic American Neighborhood Action Comm.*, 101 F.3d at 881 (Article 78 proceeding was "perfectly adequate postdeprivation remedy" when random and unauthorized act of city official effectively blacklisted city contractor from city procurements), *with DiBlasio v. Novello*, 344 F.3d 292, 302 (2d Cir.2003) (finding that allegedly defamatory statements of high-ranking state official were not random and unauthorized and remanding case for further proceedings on whether availability of Article 78 hearing satisfied due process).

One court has found that the availability of a postdeprivation Article 78 proceeding only to challenge the assertion of a lien violates due process. *Acevedo v. Surles*, 778 F.Supp. 179, 189 (S.D.N.Y.1991). The court suggested, however, that as long as plaintiffs were afforded some meaningful opportunity to challenge the lien before it was asserted due process would be satisfied. *See id.* at 189 (filing of counterclaim by municipal defendants within course of section 1983 lawsuit would provide plaintiffs with adequate predeprivation hearing on whether assessed charges were accurate, valid and legal); *see also Siegel v. Surles*, No. 4053119/93, slip op. (N.Y.Sup. Ct., Mar. 20, 1995) (adopting the *Acevedo* court's reasoning).

### F. Rule 68

"Offers of judgment pursuant to Fed. R.Civ.P. 68 are construed according to ordinary contract principles." *Goodheart Clothing Co., Inc. v. Laura Goodman Enterprises, Inc.*, 962 F.2d 268, 272 (2d Cir. 1992). Several contract principles are relevant in interpreting a Rule 68 judgment: "[I]f a writing, or the term in question, appears to be plain and unambiguous on its face, its meaning must be determined from the four corners of the instrument

without resort to extrinsic evidence of any nature." *Id.* at 272 (quoting John D. Calamari & Joseph M. Perillo, Contracts 166–67 (3d ed.1987)); *see also United States v. Armour & Co.,* 402 U.S. 673, 682, 91 S.Ct. 1752, 29 L.Ed.2d 256 (1971) (applying the "four corners" analysis to a consent decree). "Contractual language is unambiguous if it has a definite and precise meaning, unattended by danger of misconception in the purport of the [contract] itself, and concerning which there is no reasonable basis for a difference of opinion." *Goodheart Clothing Co., Inc.,* 962 F.2d at 272 (quoting *Hunt Ltd. v. Lifschultz Fast Freight, Inc.,* 889 F.2d 1274, 1277 (2d Cir.1989) (internal quotation and citation omitted)). "Contract language is ambiguous if it is reasonably susceptible of more than one interpretation, and a court makes this determination by reference to the contract alone." *Goodheart Clothing Co., Inc.,* 962 F.2d at 272 (quoting *Burger King Corp. v. Horn & Hardart Co.,* 893 F.2d 525, 527 (2d Cir. 1990) (internal citations omitted)).

## IV. Application of Law to Facts

### A. Section 104–b of New York Social Services Law

Defendants have complied with the requirements for asserting a lien for public assistance pursuant to section 104–b of the New York Social Services Law. There is no indication, and plaintiff does not contend, that plaintiff's section 1983 claim is not a suit for personal injuries within the meaning of section 104–b or that defendants have failed to comply with the notice provisions of the statute.

### B. Jurisdiction

The court has jurisdiction over this matter. It rests on its inherent power to enforce its own judgments as well as ancillary jurisdiction to enforce the Rule 68 agreement it endorsed.

### C. Pre-emption

■ In the present context, plaintiff's argument that section 1983 preempts New York's Lien Law in cases in which the losing municipal defendant attempts to reduce recovery by setting off amounts it claims it is owed by the winning plaintiffs is unconvincing. Allowing the City to assert a lien on plaintiff's Rule 68 judgment does not interfere with the purpose and objectives of section 1983.

As a preliminary matter, there has been no judgment of liability in this case. Defendants' Rule 68 offer specifically stated that it was not to be construed as an admission of liability. Thus, plaintiff's contention that allowing the City to assert a lien on her recovery is like permitting a government tortfeasor to make an end-run around compensation is inaccurate. The City has not been adjudicated a tortfeasor; it may have extended the Rule 68 offer in order to avoid such a finding of liability.

While permitting a government defendant to recoup damages awards it has paid for civil rights violations may reduce the deterrence purpose of section 1983 in some situations, there is no such problem in the instant case. Unlike other cases in which the amount of the lien was nearly or even exceeded the full amount of the recovery, the amount of the lien in this case is only 14% of plaintiff's portion of the Rule 68 judgment (excluding the amount awarded to her children). Enabling the City to assert a lien in this case does not establish a dangerous incentive for City employees to ignore the civil rights of those on public assistance.

Courts cannot assume that a plaintiff will not want to repay her debts for public assistance. As a policy matter, it may be unwise for the City to assert a lien for full repayment of public assistance before a recipient is completely self-sufficient.

Welfare officials arguably should base their demands for repayment, through the assertion of a lien or otherwise, on a genuine ability to repay, not the mere availability of funds. Such a determination, however, is a matter for the legislature.

### D. First Amendment

In asserting a lien on plaintiff's recovery in the instant suit, the City has not infringed on plaintiff's First Amendment rights. A lien, by definition, cannot exceed the amount of recovery against which it is asserted. In this case, the amount of the lien asserted against plaintiff's portion of the Rule 68 judgment is only 14%. In addition, before accepting the judgment, plaintiff received a Notice of Lien which clearly and explicitly informed her of the applicable law and her obligation to repay the City for the public assistance she received. Plaintiff does not contend that the City's actions discouraged her from continuing her lawsuit in any significant way. Any chilling effect on plaintiff's exercise of her First Amendment right of access to the courts is *de minimus*. Assertion of the lien does not place an undue burden on access to the courts.

### E. Procedural Due Process

Because this court has retained jurisdiction over the terms of the Rule 68 judgment in this case, it is not necessary to decide whether the availability of a post-deprivation Article 78 proceeding to challenge the assertion of a lien for public assistance or the amount of such lien satisfies due process. Plaintiff has been afforded an opportunity, within the course of her present lawsuit, to be heard on whether the lien is legal, valid and accurate. Such an opportunity to be heard comports with the fundamental requirement of due process.

To protect plaintiff's rights, the City was ordered to place the amount it claimed as a lien in escrow. The matter of the correctness of the amount claimed is referred to the magistrate judge should plaintiff wish to contest the City's claim.

### F. Rule 68

Plaintiff's contention that allowing the City to assert a lien on her recovery violates Rule 68 is without merit. Defendants' Rule 68 offer means only that plaintiff is entitled to take judgment in the sum of $90,001.00 plus costs and reasonable attorneys' fees. In asserting a lien on the judgement, the City is not attempting to modify its terms. Rather, plaintiff will receive the full benefit of the judgment.

The language of the Rule 68 offer is unambiguous. There is no warrant for resort to extrinsic evidence of conversations the parties might have had regarding the City's intention to assert a lien on the judgment or plaintiff's intention to contest such a lien.

### V. Conclusion

Plaintiff's motion for a declaratory judgment and to enforce the full amount of the judgment free and clear of any liens is denied. The City is entitled to assert a lien for public assistance against the proceeds of plaintiff's Rule 68 judgment. Any disputes as to the amount of the lien or the amount of interest accrued on the judgment are referred to the magistrate judge assigned to this matter.

SO ORDERED.