**NICHOLAS LABORATORIES LIMITED, Appellee,**

v.

**ALMAY, INC., Appellant.**

**No. 948, Docket 89–9179.**

United States Court of Appeals,
Second Circuit.

Argued Feb. 27, 1990.

Decided April 4, 1990.

Rehearing and Rehearing In Banc
Denied May 7, 1990.

Richard A. Williamson, New York City (Robert Polifka, Thomas A. Egan, Flemming, Zulack & Williamson, New York City, of counsel), for appellant.

Frederick Newman (Paula G. deDominici, Blodnick, Abramowitz, Newman, Schultz & Bass, Lake Success, N.Y.), for appellee.

Before OAKES, Chief Judge,
FEINBERG and WALKER, Circuit
Judges.

PER CURIAM:

Almay, Inc. ("Almay"), appeals a November 27, 1989, judgment of the United States

District Court for the Southern District of New York, Peter K. Leisure, Judge, granting summary judgment to Nicholas Laboratories Limited ("Nicholas Labs") in its action seeking a declaration that Almay may not terminate its licensing agreement with Nicholas Labs except upon Nicholas Labs' default, insolvency, or consent. The judgment was entered in accordance with an opinion dated October 27, 1989, and published at 723 F.Supp. 1015 (S.D.N.Y.1989). We affirm.

Pursuant to an agreement dated July 1, 1975, Nicholas Labs obtained a license to use Almay's trademark and technical know-how in connection with the distribution of Nicholas Labs' products in the United Kingdom, Ireland, Malta, Finland, the Isle of Man, the Channel Islands, and Gibraltar. By letter dated December 20, 1988, Almay notified Nicholas Labs that it intended to terminate the agreement as of June 30, 1990. Arguing that Almay had no such right to terminate, Nicholas Labs brought this action for a declaratory judgment.

Three paragraphs in the licensing agreement address termination. Paragraph 7 of the agreement allows Almay to terminate upon a default by Nicholas Labs, provided that Almay furnishes sixty days' notice. Paragraph 8 allows termination if Nicholas Labs becomes insolvent and expressly provides that no notice by Almay is required for termination upon insolvency. Almay contends that the third of these paragraphs, paragraph 9, provides authority for its right to terminate:

9. *Term of Agreement*

This Agreement shall take effect as of July 1, 1975 and shall continue in effect until June 30, 1980, and thereafter for successive periods of five (5) Fiscal Years, subject to Licensor's right to terminate in accordance with the provisions of paragraph 7 above [providing for termination upon default], termination in accordance with the provisions of paragraph 8 above [providing for termination upon insolvency], termination by mutual agreement of the parties hereto or termination by Licensee at any time upon at least 12 months prior notice to Licensor.

Almay's interpretation of the language in paragraph 9 stating that "[t]his Agreement shall take effect as of July 1, 1975 and shall continue in effect until June 30, 1980, and thereafter for successive periods of five (5) Fiscal Years" is that the agreement continues until June 30, 1980, and then may be renewed or terminated at will by the parties every five years. Under its interpretation, Almay would be entitled to terminate at will as of June 30, 1990, the conclusion of the most recent five-year period.

Nicholas Labs' position is that paragraph 9 limits termination to the four grounds specifically enumerated in the paragraph: default, insolvency, mutual agreement, and unilateral termination by the licensee Nicholas Labs upon twelve months' prior notice. Nicholas Labs contends that the language in paragraph 9 spelling out five-year terms starting on June 30, 1980, modifies paragraph 5(c) of the agreement, which structures the calculation of royalties into five-year terms, but does not identify the precise starting date of these terms:

5. *Royalties*

. . . .

(c) During each Fiscal Year of the initial five year term hereof, Licensee shall pay to Licensor as royalties in accordance with the provisions of the preceding paragraphs (a) and (b) [which explain the annual royalties for use of trademark and knowhow, respectively] a minimum aggregate royalty of $75,000. In each subsequent five (5) Fiscal Year period Licensee shall during each Fiscal Year thereof pay to Licensor as royalties in accordance with the provisions of the preceding paragraphs (a) and (b) a minimum aggregate royalty equal to the greater of $75,000 or the annual average of the total amount of royalties paid in respect to Total Net Sales of all Products other than Licensee Products during the five (5) Fiscal Year period immediately preceding the first of those years.

The agreement provides that it is governed by New York law. Under New York law, we first look to the written agreement to discern the parties' intent

and limit our inquiry to the words of the agreement itself so long as the agreement sets forth the parties' intent clearly and unambiguously. *See International Klafter Co. v. Continental Casualty Co.*, 869 F.2d 96, 99 (2d Cir.1989) (citing *Slatt v. Slatt*, 64 N.Y.2d 966, 967, 477 N.E.2d 1099, 1100, 488 N.Y.S.2d 645, 646 (1985)). Because the interpretation of the words of a contract is generally a question of law, we review the district court's determination de novo. *See Network Publishing Corp. v. Shapiro*, 895 F.2d 97 (2d Cir.1990) (citing *Eddy v. Prudence Bonds Corp.*, 165 F.2d 157, 163 (2d Cir.1947) (L. Hand, J.)).

■ Upon our review of the agreement, we, like the district court, find no indication that the parties intended that the agreement be terminable at will at the conclusion of each five-year period. The language Almay invokes as supporting its right to terminate—"[t]his Agreement shall take effect as of July 1, 1975 and shall continue in effect until June 30, 1980, and thereafter for successive periods of five (5) Fiscal Years"—contains no express language referring to termination. If the parties intended that the conclusion of each five-year period would trigger a right to terminate, one would imagine that the parties would have used more explicit language to so indicate. Indeed, the word "terminate" or "termination" accompanies the four grounds for which paragraph 9 clearly authorizes termination, which, as noted above, are default, insolvency, unilateral termination by Nicholas Labs, and mutual agreement of the parties. The appearance of "terminate" or "termination" four separate times in paragraph 9 indicates that the parties knew how to communicate their intention that a certain condition would give rise to a right to terminate. The absence of "termination," or a synonym, alongside the language in paragraph 9 identifying the five-year terms indicates that the parties did not intend for a right of at-will termination to accompany each five-year term.

Moreover, we note that for the three instances in which paragraph 9 gives one party a unilateral right to terminate, the contract contains a provision regarding notice. As noted above, paragraph 7 provides that Almay must furnish sixty days' notice to terminate upon Nicholas Labs' default, and paragraph 8 states that Almay is not required to furnish any notice in the case of Nicholas Labs' insolvency. The language in paragraph 9 granting Nicholas Labs the right to terminate unilaterally mandates "at least 12 months prior notice to the Licensor [Almay]." Only when the parties terminate upon mutual agreement, where there would be no need for notice to protect an unsuspecting, non-terminating party, does the agreement contain no provision regarding notice. The absence of any language discussing notice to the non-terminating party following the conclusion of a five-year period further confirms that the parties never intended a right of termination to attach to the conclusion of each five-year period.

Almay contends that the language setting forth successive five-year periods commencing June 30, 1980, would be rendered "meaningless" if it were not read to define a right of termination. We disagree. Paragraph 5(c) structures the calculation of royalties into five-year periods but does not identify the precise dates constituting each period. Paragraph 9 fills in this gap and supplements paragraph 5(c) by specifying that the first five-year period runs from July 1, 1975, until June 30, 1980, and that the remaining five-year periods run accordingly.

Similarly, we are unpersuaded by Almay's argument that our interpretation of the agreement locks it into a "perpetual" contract, without any means for it to protect itself against unforeseen, future circumstances. *See Payroll Express Corp. v. Aetna Casualty and Surety Co.*, 659 F.2d 285, 291–92 (2d Cir.1981) (noting New York policy disfavoring perpetual contracts). As the district court noted, this agreement contains several carefully considered means of protecting Almay. Most notably, the agreement gives Almay the right to terminate when circumstances indicate that Nicholas Labs no longer possesses the means or willingness to satisfy its obli-

gations under the agreement—i.e., upon default or insolvency.

For these reasons, we conclude that the parties did not intend to create a right of termination springing from the close of the five-year period ending June 30, 1990.

Judgment affirmed.