116 F.3d 1482
 NOTICE: Seventh Circuit Rule 53(b)(2) states unpublished orders shall not be cited or used as precedent except to support a claim of res judicata, collateral estoppel or law of the case in any federal court within the circuit.
HURLETRON INCORPORATED, Plaintiff-Appellant,
v.
ELTEX-ELEKTROSTATIK-GESELLSCHAFT mbH, Defendant-Appellee.
 Nos. 96-4187, 97-1699.
 United States Court of Appeals, Seventh Circuit.
 Argued June 4, 1997.
Decided June 16, 1997.
 
 Appeal from the United States District Court for the Northern District of Illinois, Eastern Division, No. 96 C 1523; David H. Coar, Judge.
 Before BAUER, WOOD, and MANION, Circuit Judges.
 
 ORDER
 
 1
 The parties to this interlocutory appeal ask us to review the district court's interpretation of the termination provisions in a licensing agreement between them. Plaintiff Hurletron Inc. ("Hurletron") filed suit below, seeking a declaratory judgment that the agreement is still in force between the parties and a preliminary injunction compelling the defendant Eltex-Elektrostatik-Gesellschaft mbH ("Eltex") to disclose certain technological information pursuant to the terms of the agreement. The district court denied Hurletron's motion for a preliminary injunction and granted partial summary judgment in favor of Eltex, finding that the termination provisions in the agreement allowed Eltex to terminate the agreement on June 24, 1997. Because we believe that the district court correctly construed the terminations provisions, we affirm.
 
 
 2
 We review a district court order granting summary judgment de novo. Murphy v. Keystone Steel & Wire Co., 61 F.3d 560, 564 (7th Cir.1995). In reviewing a district court order granting or denying a preliminary injunction, we review the court's factual findings for clear error and its legal conclusions de novo. Thomas & Betts Corp. v. Panduit Corp., 65 F.3d 654, 657 (7th Cir.1995), cert. denied, 516 U.S. 1159, 116 S.Ct. 1044 (1996). Because contract interpretation is a question of law, we review the district court's interpretation of the agreement de novo. GNB Battery Technologies, Inc. v. Gould, Inc., 65 F.3d 615, 621 (7th Cir.1995). Here the district court denied Hurletron's motion for a preliminary injunction and granted Eltex's motion for partial summary judgment solely on the basis of its interpretation of the agreement. Thus, we review both orders de novo.
 
 
 3
 The termination provision at issues states:
 
 ARTICLE XIII--TERM AND TERMINATION PROVISIONS
 
 4
 A. This Agreement and the license herein granted shall continue for the life of said licensed U.S. Patent No. 4,208,965 until June 24, 1997 and thereafter from year to year unless terminated as provided for herein.
 
 
 5
 B. This Agreement and the license herein granted may also be terminated by Eltex upon one hundred eighty (180) days notice in writing if Hurletron shall fail [to comply with certain provisions in the agreement or breach a material provision and fail to cure].
 
 
 6
 C. This Agreement and the license may also be terminated by Hurletron upon one hundred eighty (180) days notice in writing if Eltex shall fail to provide the "know-how" coming hereunder or shall otherwise breach a material provision and [fail to cure].
 
 
 7
 * * *
 
 
 8
 E. If Hurletron reaches less than 30% of the turn-over mentioned under D, Eltex shall be allowed to revoke this Agreement according to Paragraph B above with a period of notice of 180 days by Registered Air Mail.
 
 
 9
 (App. at A24-25).
 
 
 10
 Neither party contends that it is entitled to terminate the agreement under paragraphs B, C, or E. Rather, the parties dispute whether paragraph A provides an independent basis to terminate the agreement. Hurletron maintains that paragraph A merely establishes the term of the agreement, a term which will extend beyond the expiration of the licensed patent, and that paragraph A does not create a right to terminate independent of the rights to terminate contained in paragraphs B, C, and E. Initially, it reasons that reading paragraph A to create a right of termination would ignore or misconstrue that portion of paragraph A which states that the agreement will continue from year to year "unless terminated by either party as provided for herein. " Hurletron points to other provisions in the agreement where "as provided for herein" or similar language means as provided for in a different paragraph of the agreement. See, e.g., (Art. XIV, App. at A25) (permitting Hurletron to finish producing and delivering any pre-termination orders after termination provided that the orders "be subject to the royalty requirements herein provided," referring to the royalty requirements contained in Art. XI). However, contrary to Hurletron's assertions, these provisions do not necessarily establish that "as provided for herein" as used in paragraph A limits the right to terminate the agreement to the rights to terminate established in other paragraphs. The plain meaning of "provided for herein" is not as provided for somewhere else, such as in another paragraph. Rather, at most, the plain meaning of the term as used in paragraph A limits the parties' ability to terminate the agreement to those termination rights found anywhere in the agreement, including in paragraph A itself.
 
 
 11
 Furthermore, reading "as provided for herein" to include any right to terminate, including one contained in paragraph A, would not be inconsistent with other portions of the agreement. In other portions of the agreement, where the parties intended to link or limit a right to one contained in another paragraph, the agreement expressly provides that the paragraph is limited by the preceding section. For example, within Article XIII the agreement expressly states that termination under paragraph B "shall be without prejudice to Eltex in recovering sums then due and payable under Article XI hereof," (Art. XIII, p B, App. at A24), and that Eltex may license its patent rights to third parties "[i]f Hurletron does not reach the following listed cumulative total gross sales turn-over with the products listed in Appendix A and others which will be added to the products covered by this agreement per Article VI above." (Art. XIII, p D, App. at A24-25). Most notably, paragraph E sets forth the procedure for revoking the agreement by expressly incorporating paragraphs B and D:
 
 
 12
 E. If Hurletron reaches less than 30% of the turn-over mentioned under D, Eltex shall be allowed to revoke this agreement according to paragraph B above with a period of 180 days notice by Registered Air Mail.
 
 
 13
 (Art. XIII, p E, App. at A25) (emphasis added). Thus, if the parties intended to limit any right to terminate to those rights not found in paragraph A, they most likely would have stated more directly that the agreement could be terminated only pursuant to paragraphs B, C, and E.
 
 
 14
 Hurletron also maintains that reading paragraph A as creating an independent right to terminate would be inconsistent with the rest of the agreement because any right of termination under paragraph A would not require the terminating party to notify the other party in advance. Hurletron notes that all three of the other termination and revocation provisions contained in the agreement require notice before a party may terminate or revoke the agreement. However, unlike the grounds for termination or revocation contained in the other provisions, the grounds for termination under paragraph A would be evident to both parties based on the language in paragraph A. Paragraph A states that the agreement will continue until June 24, 1997. Thus, both parties would be able to determine when the agreement terminates, and notice would not be needed to protect an unsuspecting, non-terminating party. Moreover, the other provisions in the agreement provide notice and a period of time so that the non-terminating party may cure the default giving rise to the termination. However, under paragraph A, a party would not need cause to terminate the agreement. Therefore, any period to cure would be unnecessary. Accordingly, reading paragraph A as creating an independent right to terminate would not be inconsistent with the rest of the agreement.
 
 
 15
 On the other hand, Hurletron's reading of paragraph A would render meaningless other provisions in Article XIII. For example, Hurletron's reading ignores language in paragraphs B and C. Both paragraphs provide that the agreement and license "may also be terminated" upon certain events. (Art. XIII, pp B, C, App. at A24). No provisions in the agreement preceding paragraphs B and C provide a right to terminate. Indeed, paragraph A is the only preceding paragraph which even mentions termination of the agreement. Thus, if paragraph A did not create a right to terminate the agreement, the "also" language in paragraphs B and C would be meaningless. Hurletron argues that we should place less weight on the also language than we place on the "as provided herein" term because the parties omitted also from paragraph E. Hurletron reasons that if the parties intended the use of the word to play such a crucial role in the agreement, the parties would have inserted it into paragraph E as well. However, paragraph E gives Eltex a right to revoke the agreement rather than terminate it, while paragraphs B and C expressly provide a right to terminate. Paragraph A uses the term terminate. Thus, any independent right to end the agreement contained in paragraph A would have to be a right to terminate. Logically, paragraphs B and C, which contain the same right as paragraph A, would include the word also, while paragraph E, which contains a different right--the right to revoke--would not provide that a party "may also revoke the agreement" because no other provision in the agreement allows a party to revoke the agreement.
 
 
 16
 More importantly, Hurletron's reading would render meaningless the language in paragraph A stating that the agreement shall continue until the licensed patent's expiration date and setting forth successive one-year terms after the expiration date. In arguing that its interpretation would not render the year-to-year provision meaningless, Hurletron relies on Nicholas Lab., Ltd. v. Almay, Inc., 900 F.2d 19 (2d Cir.1990), which held that language similar to the language in paragraph A did not create an independent right to terminate. In Nicholas Labs, the Second Circuit held that language stating that the agreement at issue would continue until a specified date "and thereafter for successive periods of five (5) Fiscal years" was not meaningless even if it did not create an independent right to terminate at the end of each five-year period because the five-year term modified an earlier provision in the agreement which structured the calculation of royalties but did not identify a precise starting date. Id. at 21.
 
 
 17
 The language in this agreement is similar to the language in the agreement at issue in Nicholas Labs. However, we cannot read the year-to-year term in paragraph A as modifying the royalty provision because two important factors distinguish this agreement from the agreement in Nicholas Labs. First, one section of the Nicholas Labs agreement envisioned the calculation of royalties based on a five-year fiscal term but did not specify a precise starting date for the fiscal term. Id. at 20. The disputed five-year term language provided that the agreement would take effect on July 1, 1975 and continue until June 30, 1980--a period of five years--and that thereafter the agreement would continue for successive five-year periods. Id. Thus, the initial term was equal in length to one royalty period, and the court could infer that the five-year provision "supplement[ed] paragraph 5(c) [the royalty provision] by specifying that the first five-year period runs from July 1, 1975, until June 30, 1980, and that the remaining five-year periods run accordingly." Id. at 21. Here, Article XII of the agreement envisions the calculation of royalties based on a one-year term but does not identify a precise starting date for the fiscal year. (Art. XII, App. at A23). However, in contrast to the five-year provision in Nicholas Labs, paragraph A creates an initial term that extends well beyond a year.[1] Thus, we cannot infer that the year-to-year provision in paragraph A supplements Article XII by specifying when the initial fiscal year begins and ends.
 
 
 18
 Second, nothing in the Nicholas Labs opinion suggests that the ending date of the initial period--June 30, 1980--had any other significant meaning to the parties or the agreement. On the other hand, the ending date of the initial term in paragraph A--June 24, 1997--obviously has a significance for the parties other than the end of a fiscal term. June 24, 1997 is the date that the licensed patent is set to expire. Thus, unlike in Nicholas Labs, the year-to-year language does not modify the royalty term and to hold that it does not create an independent right to terminate the agreement at the end of each one-year term would render that language meaningless.
 
 
 19
 Hurletron argues that the parties inserted the language to emphasize that, contrary to the usual licensing agreement, this agreement would continue in perpetuity beyond the life of the patent. However, this seems like a strained reading. If the parties merely wished to emphasize that this agreement would not terminate upon expiration of the patent, they most likely would have so provided by stating that the agreement would continue after the licensed patent expired and until one of the parties terminated the agreement pursuant to paragraphs B, C, or E. Moreover, as we have explained above, Hurletron's reading fails to give meaning to several provisions in Article XIII. Paragraph A clearly states that the agreement "will continue for the life of [the licensed patent] until June 24, 1997 and thereafter from year to year " unless terminated. (Art. XIII, p A, App. at A24) (emphasis added). Likewise, language in paragraphs B and C, stating that the agreement may also be terminated pursuant to those paragraphs, suggests that the parties intended to create an independent right to terminate in paragraph A. Thus, the most plausible reading of paragraph A and the one which gives effect to all of the provisions in Article XIII is that under paragraph A the agreement will terminate on June 24, 1997 but will be automatically renewed for successive year terms unless either of the parties decides to terminate it at the end of a term or unless either of the parties terminates it pursuant to paragraphs B, C, or E at any time during the life of the agreement. A contractual interpretation that gives reasonable meaning to all terms of the agreement is preferable to an interpretation which gives no effect to some terms. GNB Battery Technologies, 65 F.3d at 622. Therefore, we hold that paragraph A creates an implicit right to terminate the agreement on June 24, 1997 or June 24 of any subsequent year that the agreement is still in effect.
 
 
 20
 Eltex has expressed its desire to terminate the agreement on June 24, 1997, the date the licensed patent expires. Thus, the district court properly determined that the agreement will terminate on that date. The district court order granting partial summary judgment to Eltex and denying Hurletron's motion for a preliminary injunction is AFFIRMED.
 
 
 
 [1]
 Although paragraph A does not specify an effective date, we can assume the effective date is April 1, 1982. (See Preamble, App. at A17). Paragraph A provides that the agreement continues until June 24, 1997. Thus, the initial term under the agreement lasts more than 15 years. Moreover, we note that the absence of an effective date in paragraph A suggests that the parties did not intend paragraph A to identify the precise start and end of the royalty period. If the parties intended to define the royalty period, they most likely would have included a starting date as well as an ending date