**NOT FOR PUBLICATION**

**UNITED STATES BANKRUPTCY APPELLATE PANEL**
**OF THE NINTH CIRCUIT**

| | |
|---|---|
| In re: | ) BAP No.   CC-17-1102-FLKu |
| | ) |
| ISABEL TENORIO, | ) Bk. No.   6:15-bk-21717-SC |
| | ) |
| Debtor. | ) Adv. Pro. 6:16-ap-01022-SC |
| _____ | ) |
| MARIA C. PEREZ, | ) |
| | ) |
| Appellant, | ) |
| | ) |
| v. | ) **MEMORANDUM**[*] |
| | ) |
| LYNDA T. BUI, Trustee, | ) |
| | ) |
| Appellee. | ) |
| _____ | ) |

Argued and submitted on January 25, 2018
at Pasadena, California

Filed – February 8, 2018

Appeal from the United States Bankruptcy Court
for the Central District of California

Honorable Scott C. Clarkson, Bankruptcy Judge, Presiding

Appearances:   Moises A. Aviles, Aviles & Associates, argued for appellant Maria C. Perez; Brandon J. Iskander, Shulman Hodges & Bastian LLP, argued for appellee Lynda T. Bui, Trustee.

Before:  FARIS, LAFFERTY, and KURTZ, Bankruptcy Judges.

[*] This disposition is not appropriate for publication. Although it may be cited for whatever persuasive value it may have, see Fed. R. App. P. 32.1, it has no precedential value, see 9th Cir. BAP Rule 8024-1.

**INTRODUCTION**

Less than two years before filing for bankruptcy protection, chapter 7[1] debtor Isabel Tenorio ("Debtor") transferred her real property to her longtime friend, appellant Maria C. Perez. The chapter 7 trustee, Lynda T. Bui ("Trustee"), challenged the transfer as an actual and constructive fraudulent transfer. The bankruptcy court granted the Trustee summary judgment and ordered turnover of the transferred property. We AFFIRM.

**FACTUAL BACKGROUND**

**A. The prepetition transfer**

This appeal involves the Debtor, the Debtor's close friend of thirty-five years, Ms. Perez, and Ms. Perez's sister, Carmen A. Aguayo. It also involves real property located in San Bernardino, California (the "Property") and transfers of that Property from Ms. Aguayo to the Debtor, and then from the Debtor to Ms. Perez.

On or around November 18, 2010, the Debtor acquired the Property via grant deed from Ms. Aguayo. Maverick Funding Corporation ("Maverick") loaned the Debtor money to finance the purchase and recorded a deed of trust against the Property secured by a note in the amount of $83,870.

Shortly thereafter, on December 4, 2010, the Debtor executed a grant deed transferring the Property to Ms. Perez. The parties did not record the grant deed, however, until three years later

---

[1] Unless specified otherwise, all chapter and section references are to the Bankruptcy Code, 11 U.S.C. §§ 101-1532, all "Rule" references are to the Federal Rules of Bankruptcy Procedure, and all "Civil Rule" references are to the Federal Rules of Civil Procedure.

on January 7, 2014. The Debtor did not receive any consideration for the transfer to Ms. Perez.

There are many indications in the record that the Debtor acted throughout for the benefit of Ms. Perez, and possibly Ms. Aguayo too. The Debtor testified that she took out the mortgage loan for Ms. Perez because Ms. Perez could not qualify for a loan. Ms. Aguayo has continuously resided at the Property; the Debtor stated that she has never lived at the Property, but she occasionally stays at the Property on the weekends with Ms. Aguayo.

According to the Debtor, Ms. Perez paid the mortgage loan on the Property, even though the mortgage statements are addressed to the Debtor. She and Ms. Perez are beneficiaries under the homeowner's insurance policy effective August 2015. The Debtor also claimed the mortgage interest deduction on her 2013 and 2014 tax returns.

**B.    The Debtor's chapter 7 bankruptcy**

On December 2, 2015, approximately one year and eleven months after the recordation of the transfer, the Debtor filed a chapter 7 petition.

The Debtor disclosed personal property assets totaling $17,157 and no real property assets. She claimed personal property exemptions totaling $6,302. She identified $87,559 in secured debt and $20,097 in unsecured credit card debt (including an $18,741 debt to Wells Fargo), for a total of $107,656. She indicated that her monthly income was $2,109.

Even though the Debtor did not list any interest in real property on her Schedule A, she identified the Property as her

3

residence on her petition and claimed a $75,000 exemption on her Schedule C. She identified Wells Fargo Home Mortgage as holding a $76,704 claim secured by "FHA Real Estate Mortgage" – presumably a reference to the Property. On her statement of financial affairs, she represented that she did not "sell, trade, or transfer any property to anyone" within two years of the petition date. She also did not disclose that she is a beneficiary of the homeowner's insurance policy and affirmatively represented that she did not have any interest in an insurance policy, including homeowner's insurance.

She erroneously identified Ms. Perez as a codebtor and disclosed a debt to Wells Fargo Home Mortgage. She stated, "Debtor was unable to pay mortgage and transferred title to Maria Perez who maintained mortgage payments since January 2014."

On her statement of financial affairs, the Debtor listed a pending collection case against her filed by Wells Fargo Bank on July 13, 2015 (presumably the same "credit card" debt held by "Wf Crd Svc" that she disclosed as an unsecured debt). On April 5, 2016, Wells Fargo Bank filed a proof of claim in the amount of $18,741.96, based on a revolving line of credit opened on August 1, 1994.[2]

**C.    The adversary complaint**

On February 3, 2016, the Trustee filed an adversary complaint against Ms. Perez, seeking to avoid the transfer of the

---

[2] According to the Trustee, this is the same debt that is the subject of the Wells Fargo lawsuit; Wells Fargo did not pursue the lawsuit after the Debtor filed for bankruptcy and instead filed a proof of claim in the Debtor's bankruptcy case.

4

Property as a fraudulent transfer and recover the Property for the estate. The Trustee alleged that the Debtor transferred the Property to Ms. Perez within two years of her bankruptcy filing and for no consideration. She alleged that the Debtor continues to reside at the Property, that the Debtor does not pay rent to Ms. Perez, that the mortgage loan on the Property is still in the Debtor's name, that the Debtor took the mortgage interest deduction in her 2013 and 2014 tax returns, and that the homeowner's insurance policy was in the Debtor's and Ms. Perez's names. The Trustee further alleged that the value of the transfer (i.e., the equity in the Property) was approximately $128,000.[3]

The Trustee sought recovery of the Property and asserted claims for intentional and constructive fraudulent transfer. With regard to the intentional fraudulent transfer, the Trustee alleged that the Debtor transferred the Property for the benefit of an insider and for no consideration within four years of the petition date and with the intent to hinder, delay, or defraud her creditors. Regarding constructive fraudulent transfer, the Trustee alleged that the Debtor was rendered insolvent by the transfer and made the transfer to or for the benefit of an insider.

**D.    The motions for summary judgment**

Ms. Perez filed a motion for summary judgment and argued that the Trustee could not establish an intentional or

---

[3] The Trustee asserted that the fair market value of the Property was $205,000 and the secured debt was $76,400, for a difference of approximately $128,000.

constructive fraudulent transfer because "the transfer was an interfamily transfer, not a transfer to hide the Debtor's assets in a fraudulent manner." In particular, Ms. Perez argued that the Debtor was not insolvent after the transfer occurred because the Debtor could pay her debts as they became due. Ms. Perez did not attach a declaration by the Debtor as to her intent regarding the transfer.

The Trustee also filed a motion for summary judgment ("Motion"), arguing that the transfer was intentionally and constructively fraudulent. She argued that summary judgment was appropriate because there were no genuine issues as to any material fact: "The Debtor has admitted she transferred the Property, which constitutes substantially all of her assets, to a friend of thirty-five years, for no consideration because she was unable to pay the mortgage[,]" but the Debtor "continues to enjoy the Property on certain weekends, lists the Property as her 'principal residence' on her Petition, and claims a $75,000.00 homestead exemption on the Property, all the while failing to disclose the Transfer on her Statement of Financial Affairs." She sought to avoid the transfer under § 544 and recover the Property pursuant to § 550(a).

The Trustee argued that she proved the Debtor's actual fraudulent intent under § 548(a)(1)(A) and California Civil Code § 3439.04(a)(1) because seven badges of fraud were present: (1) the transfer was made to an insider, a close friend of thirty-five years; (2) the Debtor and Ms. Perez admitted that no consideration was given in exchange for the transfer; (3) the Debtor concealed the transfer by stating in her schedules that

6

she did not transfer any property to anyone within two years of the petition date; (4) the Debtor retained the benefits of owning the Property by staying at the Property on certain weekends; (5) there were pending collection actions against the Debtor; (6) the transfer was of substantially all of the Debtor's assets, as her personal property was valued at $17,157 (compared to the Property, which the Debtor valued at $150,000); and (7) the Debtor became insolvent after the transfer. Regarding the Debtor's insolvency, the Trustee argued that, under the balance sheet test, the Debtor's debts totaling $107,656 exceeded her assets totaling $17,157.

The Trustee also argued that the transfer was a constructive fraudulent transfer under § 548(a)(1)(B) and California Civil Code § 3439.05(a). She contended that: (1) the Debtor did not receive reasonably equivalent value for the transfer because she received no consideration; and (2) the Debtor was rendered insolvent by the transfer.

**E.    Hearing on the motions for summary judgment**

The bankruptcy court heard both summary judgment motions on March 14, 2017. The court first considered the Trustee's Motion and thoroughly examined the Trustee's list of twenty-three facts that the Trustee thought were not subject to a genuine dispute and Ms. Perez's arguments that five of those facts were disputed.

According to the Trustee's Fact #7, the Debtor transferred the Property on January 7, 2014, based on the recordation of the grant deed. Ms. Perez argued that the transfer took place on

December 4, 2010, the date the parties executed the grant deed.[4] Based on California law, the court agreed with the Trustee and held that the operative transfer date was January 7, 2014, which was within two years of the December 2, 2015 petition date.

The Trustee's Fact #13 asserted that the Debtor maintained the homeowner's insurance policy on the Property. Ms. Perez disputed that fact and said that "both Debtor and [Ms. Perez] are named on the insurance policy." The court stated that the Debtor, Ms. Perez, and Maverick are beneficiaries under the homeowner's policy. The court additionally stated that the Debtor had failed to disclose her interest in the homeowner's insurance policy in her schedules.

The Trustee's Fact #14 asserted that the Property was worth $205,000 (and had equity totaling $128,000). Ms. Perez argued that the Trustee's valuation of the Property was incorrect, unsupported, and lacked foundation because the declaration of the Trustee's real estate agent, Richard A. Halderman, did not include appraisals or other documents supporting the valuation. Mr. Halderman later provided a supplemental declaration (in conjunction with the Trustee's reply brief) that explained the reasoning behind his valuation of the Property. The court stated that Mr. Halderman's supplemental declaration provided a sufficient basis for his appraisal. The court further noted that

---

[4] At the hearing, Ms. Perez's special appearance counsel initially argued that a transfer is deemed complete when the parties execute the conveyance document, but later corrected himself and stated that he was citing the wrong body of law. Regardless, Ms. Perez's counsel argues on appeal that the transfer occurred when the parties executed the grant deed.

the dispute over the fair market value may not matter because the Debtor valued the Property in her schedules at $150,000 and the exact value was not a factor in the fraudulent transfer analysis.

The Trustee's Fact #16 asserted that the Wells Fargo litigation existed at the time the Debtor filed her petition. Ms. Perez did not deny this fact but stated that the case had been dismissed without prejudice on October 28, 2016. The court stated that Ms. Perez's reliance on the subsequent dismissal is "an irrelevant contention" because the test is whether there was "threatened litigation or act of litigation at the time of the transfer, which was the recording" of the grant deed.

The Trustee's Fact #23 asserted that there were unsecured creditors existing at the time of the transfer, as evidenced by Wells Fargo Bank's proof of claim for $18,741 based on a revolving line of credit from 1994. Ms. Perez responded that the litigation had been dismissed in state court. The bankruptcy court disagreed, stating that the subsequent dismissal without prejudice did not evidence that there were no creditors as of the transfer.[5]

Having found no genuine issue of material fact, the bankruptcy court considered the elements of the fraudulent

---

[5] Additionally, the bankruptcy court stated that there was no dispute that a creditor was in existence, because the Debtor had also disclosed a $76,704 secured debt held by Wells Fargo for real property in Maryland. But there is no Maryland property; the Maryland address identified by the court is Wells Fargo's address, not the Debtor's property address. The supposed Maryland debt in the schedules is an unclear reference to Wells Fargo's mortgage loan secured by the Property. Neither party corrected the court.

9

transfer claims. As to actual fraud and the badges of fraud laid out in California Civil Code § 3439.04(b), the court stated: (1) the Debtor and Ms. Perez are longtime friends; (2) the Debtor retained possession or control of the Property post-transfer because she was a beneficiary of the homeowner's insurance policy and admitted that she retained an interest of $150,000 in the Property; (3) the Debtor did not disclose the transfer of the Property on her bankruptcy filings and concealed the transfer; (4) the Debtor transferred the Property after she had been sued or threatened with a lawsuit; (5) the transfer represented substantially all of her assets, whether the Property is valued at $150,000 or $205,000; (6) it is unknown whether she removed or concealed assets; (7) the Debtor did not receive any consideration for the transfer; and (8) the Debtor became insolvent shortly after the transfer. The court found actual fraudulent intent by a preponderance of the evidence and granted summary judgment against Ms. Perez.

Turning to constructive fraud under California Civil Code § 3439.04(a)(2)(B), the court found that the Debtor did not receive reasonably equivalent consideration and intended to incur or believed or reasonably should have believed that she would incur debts beyond her ability to pay. The court additionally granted summary judgment in the Trustee's favor as to §§ 548 and 550. The court ordered that Ms. Perez turn over the Property to the Debtor's bankruptcy estate.

Next, the bankruptcy court denied Ms. Perez's motion for summary judgment for the same reasons it granted the Trustee's Motion.

The bankruptcy court entered its order granting the Trustee's Motion ("Summary Judgment Order"), holding that the grant deed is a fraudulent transfer under § 548, is rendered void and recovered under § 550, and is automatically preserved for the benefit of the estate under § 551. Ms. Perez filed a timely notice of appeal from the Summary Judgment Order.

**F.    Sale of the Property and the motion to dismiss**

On May 10, 2017, Ms. Perez filed a motion for a stay pending appeal.[6] She argued that the Trustee was preparing to sell the Property and that she and Ms. Aguayo would suffer irreparable injury if the court did not stay proceedings pending the BAP appeal. The Trustee opposed the motion.

Following a hearing, the bankruptcy court denied the motion for a stay pending appeal. It held that Ms. Perez "has not met her burden regarding likelihood of success on the merits. . . . The arguments stated by the Defendant in this Motion were all considered at the hearing, and were determined to be unfounded and insubstantial." The court also held that Ms. Perez did not prove that she would suffer irreparable harm and did not articulate any public interest in support of a stay. Although Ms. Aguayo may suffer irreparable harm with the loss of the

---

[6] In support of her motion for a stay, Ms. Perez for the first time included her declaration wherein she directly addressed the issue of fraudulent intent. She stated that "I did not receive the property in 2014 for any fraudulent intent." Ms. Aguayo also stated in her declaration that "My sister did not receive the property in 2014 for any fraudulent intent." But the intention that matters is the transferor's, not the transferee's. Ms. Perez did not include the Debtor's declaration concerning her intent.

11

Property, the court concluded that the balance of the factors weighed against granting a stay.

The Trustee filed before the BAP a motion to dismiss the appeal as moot under § 363(m) ("Motion to Dismiss") because the Property had been sold to Martha Medrano (who the bankruptcy court determined was a good faith purchaser) and escrow had closed on the sale of the Property. The Trustee argued that the appeal was constitutionally moot because Ms. Perez had not obtained a stay of the sale pending appeal and the Trustee had already sold the Property to Ms. Medrano. She also contended that the appeal was equitably moot because the Property had been sold, the bankruptcy court had recognized the need for finality of the sale, and Ms. Perez did not seek a stay from the BAP.

A BAP motions panel deferred decision on the Motion to Dismiss for consideration with the merits of this appeal.

### JURISDICTION

The bankruptcy court had jurisdiction pursuant to 28 U.S.C. §§ 1334 and 157(b)(2)(H). Subject to our discussion of mootness below, we have jurisdiction under 28 U.S.C. § 158.

### ISSUES

(1) Whether this appeal is moot.

(2) Whether the bankruptcy court erred in granting summary judgment on the Trustee's actual and constructive fraudulent transfer claims.

### STANDARD OF REVIEW

We review de novo a bankruptcy court's decision to grant summary judgment. Marciano v. Fahs (In re Marciano), 459 B.R. 27, 35 (9th Cir. BAP 2011), aff'd, 708 F.3d 1123 (9th Cir. 2013).

12

We also review de novo our own jurisdiction, including questions of mootness. Silver Sage Partners, Ltd. v. City of Desert Hot Springs (In re City of Desert Hot Springs), 339 F.3d 782, 787 (9th Cir. 2003). "De novo review requires that we consider a matter anew, as if no decision had been made previously." Francis v. Wallace (In re Francis), 505 B.R. 914, 917 (9th Cir. BAP 2014).

**DISCUSSION**

**A.    This appeal is not moot.**

We must first satisfy ourselves that this appeal is not moot and that we have jurisdiction over this appeal. See Ellis v. Yu (In re Ellis), 523 B.R. 673, 677 (9th Cir. BAP 2014) ("We cannot exercise jurisdiction over a moot appeal."). An appeal is moot if events have occurred that prevent an appellate court from granting effective relief. See Ederel Sport, Inc. v. Gotcha Int'l L.P. (In re Gotcha Int'l L.P.), 311 B.R. 250, 253–54 (9th Cir. BAP 2004). The "party moving for dismissal on mootness grounds bears a heavy burden." Motor Vehicle Cas. Co. v. Thorpe Insulation Co (In re Thorpe Insulation Co.), 677 F.3d 869, 880 (9th Cir. 2012) (quoting Jacobus v. Alaska, 338 F.3d 1095, 1103 (9th Cir. 2003)).

The Trustee argues in her Motion to Dismiss that this appeal is both constitutionally and equitably moot. Regarding constitutional mootness, we have stated:

Constitutional mootness derives from Article III of the United States Constitution, which provides that the exercise of judicial power depends on the existence of a case or controversy. The doctrine of constitutional mootness is essentially a recognition of Article III's prohibition against federal courts' issuing advisory opinions. While the Article III mootness doctrine has

13

> a "flexible character," it applies when events occur during the pendency of the appeal that make it impossible for the appellate court to grant effective relief. If no effective relief is possible, we must dismiss for lack of jurisdiction.

United States v. Gould (In re Gould), 401 B.R. 415, 421 (9th Cir. BAP 2009), aff'd, 603 F.3d 1100 (9th Cir. 2010) (internal citations omitted); see In re Thorpe Insulation Co., 677 F.3d at 880 (Whether a case is constitutionally moot turns on whether the Panel may provide "the appellant any effective relief in the event that it decides the matter on the merits in his favor.").

"Generally, a consummated sale to a third party who is not a party to the appeal falls within this category. This is not, however, an ironclad rule." Darby v. Zimmerman (In re Popp), 323 B.R. 260, 271 (9th Cir. BAP 2005) (citing Focus Media, Inc. v. Nat'l Broad. Co., Inc. (In re Focus Media, Inc.), 378 F.3d 916, 922-23 (9th Cir. 2004)). The sale of the Property to Ms. Medrano, a good-faith purchaser, does not necessarily prevent us from granting any effective relief if we reverse the bankruptcy court's Summary Judgment Order. There is no indication in the bankruptcy court's docket that the Trustee distributed any of the net sale proceeds to unsecured creditors. While we may not be able to return the Property to Ms. Perez, we could fashion "effective relief" by awarding her the net sale proceeds. See In re Focus Media, Inc., 378 F.3d at 923 (holding that a case is not constitutionally moot where fashioning equitable relief is not impossible).

The Trustee also argues that the appeal is equitably moot. Under the equitable mootness doctrine, we may "dismiss appeals of bankruptcy matters when there has been a 'comprehensive change of

14

circumstances . . . so as to render it inequitable for this court to consider the merits of the appeal.'" Rev Op Grp. v. ML Manager LLC (In re Mortgs. Ltd.), 771 F.3d 1211, 1214 (9th Cir. 2014) (quoting In re Thorpe Insulation Co., 677 F.3d at 880). "An appeal is equitably moot if the case presents 'transactions that are so complex or difficult to unwind' that 'debtors, creditors, and third parties are entitled to rely on [the] final bankruptcy court order.'" Id. at 1215 (quoting In re Thorpe Insulation Co., 677 F.3d at 880). To determine equitable mootness, the Ninth Circuit has stated:

> We will look first at whether a stay was sought, for absent that a party has not fully pursued its rights. If a stay was sought and not gained, we then will look to whether substantial consummation of the plan has occurred. Next, we will look to the effect a remedy may have on third parties not before the court. Finally, we will look at whether the bankruptcy court can fashion effective and equitable relief without completely knocking the props out from under the plan and thereby creating an uncontrollable situation for the bankruptcy court.

In re Thorpe Insulation Co., 677 F.3d at 881.

First, although Ms. Perez requested a stay from the bankruptcy court, she did not seek a stay pending appeal from the BAP. This would tend to indicate that she did not fully pursue her rights to save the Property, despite knowing about the impending sale. Second, the sale of the Property was completed, but there is no evidence that the net sale proceeds have been distributed. Third, as we noted above, we can grant Ms. Perez relief without disturbing Ms. Medrano's rights. Lastly, the bankruptcy court can fashion effective relief by compensating Ms. Perez with some or all of the net sale proceeds. This case is not so complex that we cannot unwind the transactions.

15

We hold that this appeal is not moot. We now turn to the merits of this appeal.

**B. The bankruptcy court did not err in granting the Trustee summary judgment on her fraudulent transfer claims.**

Based on the undisputed facts that Ms. Perez failed to rebut, the bankruptcy court properly granted the Trustee summary judgment.

### 1. Summary judgment standard

Civil Rule 56, made applicable in bankruptcy pursuant to Rules 9014 and 7056, provides that summary judgment is appropriate if "there is no genuine issue as to any material fact," and if "the movant is entitled to judgment as a matter of law." An issue is "genuine" only if there is an evidentiary basis on which a reasonable fact finder could find in favor of the non-moving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A dispute is "material" only if it could affect the outcome of the suit under governing law. Id. At the summary judgment stage, the court does not weigh the evidence and determine the truth of the matter, but determines whether there is a genuine issue for trial. Id. at 249.

Typically, the movant must present a prima facie case establishing his entitlement to summary judgment. Once that prima facie case has been established, the burden then shifts to the non-moving party to establish the existence of a genuine issue of material fact that would preclude entry of summary judgment. See Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986). The non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts" and

16

must "come forward with specific facts showing that there is a genuine issue for trial." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986) (citation and quotation marks omitted).

**2.      Fraudulent transfer under state and federal law**

The Bankruptcy Code permits trustees to attack fraudulent transfers under both federal and state law.  Section 548 is a comprehensive federal fraudulent transfer provision.  In addition, a trustee can employ state laws that provide for transfer avoidance.  Section 544(b)(1) authorizes a trustee to avoid "any transfer of an interest of the debtor in property . . . that is voidable under applicable law."  See EPD Inv. Co., LLC v. Bank of Am. Corp. (In re EPD Inv. Co., LLC), 523 B.R. 680, 685 (9th Cir. BAP 2015).

The Trustee argues that the transfer was fraudulent under § 548(a)(1) and the California Uniform Voidable Transfer Act ("UVTA"), California Civil Code §§ 3439–3439.12.  "To decide whether a transfer is avoidable under California's [UVTA], we must interpret California law."  Ezra v. Seror (In re Ezra), 537 B.R. 924, 930 (9th Cir. BAP 2015) (citation omitted).

**a.      Constructive fraud**

The bankruptcy court held that the Trustee established that the transfer was a constructive fraudulent transfer because the Debtor did not receive anything in exchange for the Property and she became insolvent as a result of the transfer.  Although the bankruptcy court cited the wrong state statute, we agree with the result.

The UVTA provides multiple types of constructive fraudulent

17

transfers. At the hearing on the motions for summary judgment, the bankruptcy court looked at California Civil Code §§ 3439.04(a)(2)(A) and (a)(2)(B). California Civil Code § 3439.04(a)(2) provides that a transfer is voidable if the debtor made the transfer:

> Without receiving a reasonably equivalent value in exchange for the transfer or obligation, and the debtor either:
>
> (A) Was engaged or was about to engage in a business or a transaction for which the remaining assets of the debtor were unreasonably small in relation to the business or transaction.
>
> (B) Intended to incur, or believed or reasonably should have believed that the debtor would incur, debts beyond the debtor's ability to pay as they became due.

Cal. Civ. Code § 3439.04(a)(2). The court held that (a)(2)(A) was inapplicable, but held that the Trustee had satisfied (a)(2)(B).

However, § 3439.04(a)(2)(B) was inapplicable because there was no evidence that the Debtor incurred or intended to incur any new debt after the date of the transfer. Instead, the bankruptcy court should have analyzed constructive fraud under California Civil Code § 3439.05(a):

> A transfer made or obligation incurred by a debtor is voidable as to a creditor whose claim arose before the transfer was made . . . if the debtor made the transfer . . . without receiving a reasonably equivalent value in exchange for the transfer . . . and the debtor was insolvent at that time or the debtor became insolvent as a result of the transfer . . . .

Cal. Civ. Code § 3439.05(a). Similarly, § 548(a)(1)(B) provides that a transfer is constructively fraudulent if, within two years of the petition date, the debtor "received less than a reasonably equivalent value in exchange for such transfer . . . ; and . . .

18

was insolvent on the date that such transfer was made . . . , or became insolvent as a result of such transfer. . . ."

Even though the bankruptcy court determined constructive fraud under the incorrect state statute, it is harmless error. We are able to determine readily from the record that the transfer was constructively fraudulent under § 548(a)(1)(B) and California Civil Code § 3439.05(a).

### i.   Timing of the transfer

The parties disagree as to when the transfer of the Property occurred. Ms. Perez maintains that the transfer took place in 2010, when the Debtor and Ms. Perez executed the grant deed; conversely, the Trustee argues that the parties transferred the Property in 2014, when they recorded the grant deed.

The bankruptcy court correctly held that, as a matter of law, January 7, 2014 was the operative date of the transfer. The recordation date is the applicable transfer date under California and federal law. See Ehring v. W. Cmty. Moneycenter (In re Ehring), 91 B.R. 897, 900 (9th Cir. BAP 1988), aff'd, 900 F.2d 184 (9th Cir. 1990) ("the transfer of the real property interest occurred when [the transferee] perfected its interest under state law. . . . In California, perfection of a deed of trust occurs upon the recordation of the document with the county recorder."). Accordingly, the transfer occurred when the parties recorded the grant deed on January 7, 2014, which is within two years of the December 2, 2015 petition date.

### ii.   Reasonably equivalent value

The bankruptcy court did not err in finding that the Debtor received no consideration for the transfer and therefore did not

19

receive "reasonably equivalent value," whether the Property is valued at $150,000 or $205,000. The UVTA provides that value is given "if, in exchange for the transfer . . . , property is transferred . . . , but value does not include an unperformed promise made otherwise than in the ordinary course of the promisor's business to furnish support to the debtor or another person." Cal. Civ. Code § 3439.03.

Ms. Perez admitted that she did not pay the Debtor anything. Rather, Ms. Perez tries to argue that because the Property was previously owned by Ms. Aguayo, "it was more of an interfamily [sic] transfer." This argument is nonsensical: many fraudulent transfers are transfers among family members, and any familial relationship between the parties has nothing to do with whether value was given. It is undisputed that Ms. Perez did not transfer any property in exchange for the Property.

### iii. Insolvency

The undisputed facts show that the transfer of the Property made the Debtor insolvent. Under the "balance sheet" test, her debts outweighed her assets.

The Bankruptcy Code defines "insolvent" as a "financial condition such that the sum of such entity's debts is greater than all of such entity's property, at a fair valuation, exclusive of . . . (i) property transferred, concealed, or removed with intent to hinder, delay, or defraud such entity's creditors; and (ii) property that may be exempted from property of the estate under section 522 of this title[.]" § 101(32)(A). California law also employs the same standard. Cal. Civ. Code § 3439.02(a) ("A debtor is insolvent if, at a fair valuation, the

20

sum of the debtor's debts is greater than the sum of the debtor's assets.").

This definition is the so-called "balance sheet" test. "In an action to recover a preference or fraudulent transfer, insolvency may be determined on the basis of a 'balance sheet' test. This correlates with the definition of 'insolvent' in § 101(32) that a corporation is insolvent if the sum of the entity's debts is greater than all of the entity's property at a fair valuation." Everett v. Thomas Capital Invs. (In re Pac. Thomas Corp.), 543 B.R. 7, 13 (Bankr. N.D. Cal. 2015) (footnote omitted); see Bay Plastics, Inc. v. BT Commercial Corp. (In re Bay Plastics, Inc.), 187 B.R. 315, 330 (Bankr. C.D. Cal. 1995) (The UVTA "adopt[s] the balance sheet test for insolvency: a debtor is insolvent if the liabilities exceed the assets."). Thus, both federal and state law agree that, under the "'balance sheet' test[,] a debtor is insolvent when its liabilities exceed its assets." Sierra Steel, Inc. v. Totten Tubes, Inc. (In re Sierra Steel, Inc.), 96 B.R. 275, 277 (9th Cir. BAP 1989).

Ms. Perez argues that the Debtor was not insolvent and could pay her creditors because she had approximately $17,000 in personal property assets post-transfer and earned approximately $2,100 per month. She contends that the Debtor had only $1,037 of secured debt. But the comparison of the Debtor's assets to her debts reveals a different story.

According to the Debtor's schedules,[7] her assets (excluding

_____

[7] Although the figures listed in the Debtor's schedules might not reflect the Debtor's financial situation at the time of the transfer nearly two years earlier, Ms. Perez did not object to the Trustee's reliance on those figures. In fact, Ms. Perez's
(continued...)

21

the transferred Property) totaled $17,157; her non-exempt property totaled $10,855. However, her debts (not including the mortgage on the Property) exceeded $30,000. These debts consisted of a car loan and credit card debt, including an $18,741 debt to Wells Fargo that was the subject of the Wells Fargo lawsuit and Wells Fargo's proof of claim. Therefore, the Debtor's debts exceeded her assets.

Ms. Perez would have us ignore the Wells Fargo claim because the state court dismissed Wells Fargo's lawsuit. But we have previously held that a claim, even if disputed, is nevertheless a "debt" for the purposes of considering a debtor's insolvency:

> To the extent the bankruptcy court refused to consider the $300,000 claim only because it was a disputed or unliquidated claim, its determination was erroneous. A "debt" is defined as liability on a claim. 11 U.S.C. § 101(11). A claim includes a right to payment, even if it is contingent, unmatured, or not reduced to judgment. 11 U.S.C. § 101(4)(A). Since claims may be disputed or contingent, disputed or contingent liabilities must be included in determining total indebtedness for purposes of determining insolvency. See 2 Collier on Bankruptcy ¶ 101.31[5].

In re Sierra Steel, Inc., 96 B.R. at 279. Moreover, the state court dismissed the Wells Fargo lawsuit without prejudice, so the dismissal did not affect Wells Fargo's underlying claim. Accordingly, the bankruptcy court properly considered the Wells Fargo claim in its calculation of the Debtor's debts.

Ms. Perez argues that the Debtor was solvent because her $2,100 monthly salary was sufficient to cover her secured debt totaling $1,037. But the "cash flow" test only supports a

---

[7](...continued)
own calculations also rely on the information in the Debtor's schedules. She thus has waived any argument that the Debtor's financial condition on the date of the transfer was different from the condition disclosed on the petition date.

22

presumption of insolvency: "A debtor that is generally not paying the debtor's debts as they become due other than as a result of a bona fide dispute is presumed to be insolvent. The presumption imposes on the party against which the presumption is directed the burden of proving that the nonexistence of insolvency is more probable than its existence." Cal. Civ. Code § 3439.02(b). The presumption does not work in reverse; in other words, even if the Debtor were paying her debts as they became due, she is not entitled to a presumption that she is solvent.

Therefore, although the bankruptcy court cited the wrong state statute, it was harmless error because the undisputed facts show that the Debtor was insolvent. The Trustee properly established a constructive fraudulent transfer.

### b. Actual fraud

The bankruptcy court also held that the transfer was an actual fraudulent transfer. California Civil Code § 3439.04 defines an actual fraudulent transfer as one made: "With actual intent to hinder, delay, or defraud any creditor of the debtor." Cal. Civ. Code § 3439.04(a). Section 548(a)(1)(A) is substantially similar: a transfer is void if, within two years of the petition date, the debtor "made such transfer . . . with actual intent to hinder, delay or defraud any entity to which the debtor was or became, on or after the date that such transfer was made . . . , indebted[.]" § 548(a)(1)(A).

As is almost always the case, the Debtor did not admit that she transferred the Property to Ms. Perez with fraudulent intent. (In fact, neither party offered any statement from the Debtor about her intent.) The bankruptcy court properly considered

23

whether the circumstantial evidence established that the Debtor intended to hinder, delay, or defraud her creditors. "Since direct evidence of intent to hinder, delay or defraud is uncommon, the determination typically is made inferentially from circumstances consistent with the requisite intent." Wolkowitz v. Beverly (In re Beverly), 374 B.R. 221, 235 (9th Cir. BAP 2007), aff'd in part, dismissed in part, 551 F.3d 1092 (9th Cir. 2008).

When determining the debtor's actual intent, courts may consider certain "badges of fraud":

(1) Whether the transfer or obligation was to an insider.

(2) Whether the debtor retained possession or control of the property transferred after the transfer.

(3) Whether the transfer or obligation was disclosed or concealed.

(4) Whether before the transfer was made or obligation was incurred, the debtor had been sued or threatened with suit.

(5) Whether the transfer was of substantially all the debtor's assets.

(6) Whether the debtor absconded.

(7) Whether the debtor removed or concealed assets.

(8) Whether the value of the consideration received by the debtor was reasonably equivalent to the value of the asset transferred or the amount of the obligation incurred.

(9) Whether the debtor was insolvent or became insolvent shortly after the transfer was made or the obligation was incurred.

(10) Whether the transfer occurred shortly before or shortly after a substantial debt was incurred.

(11) Whether the debtor transferred the essential assets of the business to a lienor that transferred the

24

assets to an insider of the debtor.

Cal. Civ. Code § 3439.04(b).

"No single factor necessarily is determinative, and no minimum or maximum number of factors dictates a particular outcome. . . . [T]he list should not be applied formulaically. Instead, the trier of fact should consider all of the relevant circumstances surrounding the transfer." In re Ezra, 537 B.R. at 931 (citations omitted).

Both the Trustee and Ms. Perez relied exclusively on circumstantial evidence of the Debtor's intent. Ms. Perez argues that the Debtor did not intend to hinder, delay, or defraud her creditors. She does not offer any declaration from the Debtor or other direct evidence of the Debtor's intent; rather, she briefly addresses each of the eleven factors enumerated above. The bankruptcy court did not err.

First, Ms. Perez is an insider. The Debtor considered Ms. Perez a "close friend" of thirty-five years whom she regarded "like my family." This special relationship is sufficient to cast Ms. Perez as an insider. See Kaisha v. Dodson, 423 B.R. 888, 901 (N.D. Cal. 2010) (a "long-time friend" with a "close relationship" can be an insider); see generally Acequia, Inc. v. Clinton (In re Acequia, Inc.), 34 F.3d 800, 806 (9th Cir. 1994) (stating that insider status may be evidenced by "a special relationship between the debtor and the transferee"). Further, the Debtor admitted that she purchased the Property from Ms. Aguayo and transferred it to Ms. Perez because she was close to the women and wanted to help them.

Second, we agree with the bankruptcy court that the Debtor

25

retained an interest in the Property by virtue of her beneficiary status on the homeowner's insurance policy. She also claimed the mortgage interest deduction for at least two years on her tax returns and lived in the Property on some weekends.

Third, the Debtor concealed the transfer of the Property. She did not record the deed for over three years. When she filed her bankruptcy papers, she did not disclose the transfer of the Property and affirmatively stated that she had not transferred any property within the past two years.

Fourth, Ms. Perez insists that the Debtor was not engaged in or threatened by a lawsuit because the state court subsequently dismissed the Wells Fargo lawsuit on October 28, 2016. The Trustee argues that the Wells Fargo lawsuit was filed in July 2015, within a year and a half of the January 2014 transfer, and that the Debtor stated that she intended on defaulting on her Wells Fargo line of credit. Neither is correct; the dismissal of the Wells Fargo lawsuit does not mean that the Debtor was relieved of her debt to Wells Fargo, but the lawsuit was not in existence "**before** the transfer was made or obligation was incurred." Moreover, the Debtor's statement that she intended to default on a debt does not necessarily mean that she was threatened with a lawsuit. There is no evidence that the Debtor was threatened with a lawsuit in January 2014. Although we disagree with the bankruptcy court's analysis of this badge of fraud, the unrebutted evidence concerning the other badges of fraud is sufficient to support the court's conclusion.

Fifth, the transfer of the Property – whether valued at $150,000 or $205,000 – constituted substantially all of the

26

Debtor's assets when compared to her personal property valued at roughly $17,000. Moreover, we agree with the court that Mr. Halderman's declaration and supplemental declaration were sufficient to establish the Property's value.

Sixth, we agree with Ms. Perez that the Debtor did not abscond.

Seventh, just as the Debtor did not disclose the transfer, she did not disclose the existence of the Property in her bankruptcy filings.

Eighth, everyone admits that the Debtor did not receive any consideration for the transfer.

Ninth, Ms. Perez argues that the transfer did not render the Debtor insolvent, because she still had assets to pay off her remaining creditors. But as discussed above, the Debtor's debts outweighed her assets.

Tenth, the record does not show that the Debtor incurred a substantial debt before or after the transfer.

Finally, the Property is not a business asset, so the eleventh factor is inapplicable.

This is the unusual case in which summary judgment on an actual intent fraudulent transfer claim was proper. Normally, it is error to grant summary judgment on an issue of intent. But in this case, Ms. Perez offered no declaration or other direct evidence of the Debtor's intent. Nor did she offer any interpretation of the circumstantial evidence that would support a reasonable inference that the Debtor lacked an intent to hinder, delay, or defraud creditors. We conclude that the bankruptcy court did not err in finding, based on the badges of

fraud, that there were no genuine issues of material fact and that the undisputed facts established that the Debtor possessed an actual intent to defraud her creditors.

## CONCLUSION

This appeal is not moot, and the bankruptcy court did not err in granting the Trustee summary judgment on the constructive and actual fraudulent transfer claims.  We AFFIRM.